This is a workmen's compensation case.
In March 1982, the claimant, James Campbell, through his next friend, filed a complaint in the Circuit Court of Marion County seeking workmen's compensation benefits from his former employer, Federal Mogul Corporation. Basically, he alleged that as a result of an accident which occurred in January 1975 and arose out of and in the course of his employment he had suffered severe injuries to his head, neck and back. Further, he alleged that these injuries had left him mentally incompetent as well as permanently and totally disabled.
After hearing, the trial court found that the claimant had sustained an injury to his "body as a whole" as the result of an accident which had arisen out of and in the course of his employment at Federal Mogul. He found the claimant to be totally and permanently disabled as the result of these injuries and awarded him $45,463 as accrued compensation benefits. This award was later reduced to $37,500. No issue regarding this reduction has been raised on appeal.
The employer asserts two arguments for reversal: First, that the employee's claim is barred by the statute of limitations; and second, that the trial court's judgment is not supported by any legal evidence. We address the latter argument first.
On appeal, review of a workmen's compensation case is limited to questions of law and to an examination of the evidence to determine if there is any legal evidence *Page 444 
to support the trial court's findings. Armstrong v. Lewis Associates Construction Co., 451 So.2d 332 (Ala.Civ.App. 1984). Where there is conflicting evidence, the findings of the trial court are conclusive on appeal. Taylor v. United States SteelCorp., 456 So.2d 831 (Ala.Civ.App. 1984).
Given our limited scope of review, the record reveals the following: Claimant was thirty-six years of age at the time of judgment. He was employed at Federal Mogul Corporation from October 16, 1974 until January 15, 1975. His position was that of an unskilled manual laborer. As one of his responsibilities, he was required to "service" various machines used in the manufacture of metal parts such as taper bearings. He would have to move and clean the parts as they made their way through the production process in order to keep the machines from getting "hung up."
Testimony from persons familiar with the claimant, both personally and in the workplace, indicates that he was known to be an illiterate, intellectually slow individual even before the alleged accident took place. He had also suffered from severe stuttering as well as epileptic seizures since early childhood. Expert testimony confirmed these problems and suggested that, as the result of severe trauma during birth, the claimant had always been a borderline mentally retarded individual. Despite these problems, however, testimony indicated that the claimant had always been a good, hard worker. He had been regularly employed since early adulthood. His supervisor at Federal Mogul characterized him as a "good employee." This all seems to have changed on January 8, 1975.
On that day, while he was moving and cleaning parts, the claimant fell into an unguarded "harpoon." Testimony indicated that this is a concrete ditch about four feet deep. It has numerous spikes or fins protruding from its sides and bottom. It is used to catch the metal shavings which are produced as the metal parts are cut. These fins drag the shavings down onto a conveyor belt and into what is referred to as a "crusher." Testimony indicates that, almost miraculously, the claimant emerged from the harpoon with only minor physical problems. Although he has since that time complained of pain in his back, neck and head, the medical testimony indicated that these problems were not in and of themselves disabling. His most serious complaint, and that upon which the trial court apparently based its finding of total permanent disability, is that, since the accident, he has suffered a complete emotional and mental breakdown. Lay testimony, from both his supervisor and friends supports this allegation.
His supervisor testified that, immediately following the accident, "Jimmy was sitting there and I was asking him if he was all right and he just looked at me in a daze, kind of sort of like, and he said, `Joe, I've just seen heaven and hell downstairs.'" According to the supervisor, although the claimant had always been mentally slow, "There was a distinct difference to his normal behavior versus that [after the accident] . . ., and we're talking distinct difference." Other persons testified that, after that accident, the claimant continually exhibited strange behavior such as walking in front of moving automobiles and babbling nonsensically. He has not been able to successfully return to work. Indeed, the record indicates that he was fired by Federal Mogul on January 15, 1975, after he failed to return to work following the accident on January 8, 1975. He has also been unable to properly take care of himself. He has been in and out of the V.A. Hospital for mental treatment since the time of this accident. When he has been out of the hospital, he has required assistance from others to ensure that he had at least some food and clothing. He was certified fully disabled because of mental incapacity by the Social Security Administration in 1977. In September 1982, he was adjudged mentally incompetent by the Probate Court of Marion County.
The psychiatrists that have been caring for the claimant have diagnosed him as: schizophrenic, a chronic undifferentiated type. Apparently, because of the pre-existing *Page 445 
seizure disorder and borderline intellectual functioning, it was difficult to test the claimant, and this is the best "pragmatic working diagnosis" the psychiatrists could make. The medical experts were not able to tie the mental disorder to a specific physical injury. Testimony from a psychologist, however, indicated that it was possible that such a mental disorder could be triggered by a physical trauma such as that experienced by the claimant when he fell into the harpoon. The psychologist was confident that the fall had at least contributed to the claimant's disability, particularly, when he took into account the claimant's pre-existing frailties.
It is the employer's argument that without specific medical testimony relating the claimant's mental disability to the injuries he received on January 8, 1975, there is no legal evidence to support the trial court's finding that this accident caused the claimant's mental disability.
Although this court has previously recognized that psychic injuries which occur as the proximate result of an accident suffered by an employee while in the line and scope of his employment are compensable, see, e.g., Bickerstaff ClayProducts Co. v. Dixon, 444 So.2d 390 (Ala.Civ.App. 1983), we have specifically refused to require that the existence and effect of such mental disability may be established only by expert medical opinion. See Fruehauf Corp. v. Prater,360 So.2d 999 (Ala.Civ.App.), cert. denied, 360 So.2d 1003 (Ala. 1978). Our position on this issue has not changed. We do not need to decide here that the very nature of an alleged mental disability may require expert medical testimony to establish both that it exists and that it was caused by an accident which the employee suffered while in the line and scope of his employment. Given the beneficent and remedial purposes of the Workmen's Compensation Act, we hold that in appropriate circumstances, an award may be made for mental disability even though medical testimony relating to its existence or cause is inconclusive, or even nonexistent. This is such a case.
The employer argues that we have, at least implicitly, held to a different rule in the past. Our review of the cases does not indicate any such rule. However, we concede that we may have used language regarding what we normally refer to as "medical causation," see City of Tuscaloosa v. Howard,55 Ala. App. 701, 318 So.2d 729 (1975), in a manner to suggest that such causation must be established by medical opinion. As so used, such language applied only to the facts of that case.
Considering the claimant's already frail mental state along with the medical testimony which confirms the existence of his disability and the testimony from lay persons which indicates that they noticed a drastic change in the claimant's mental state immediately following the accident; that he has not been his normal self since that time, as well as the testimony of the psychologist indicating that the accident had at least contributed to the claimant's current mental state, we cannot say that the trial court's judgment is unsupported by any legal evidence.
Similarly, we find that there is ample evidence in the record to support the trial court's finding that the claimant was mentally incapacitated from filing a complaint within the time period provided in § 25-5-80, Code of Alabama 1975. The facts, as heretofore stated, indicate that the claimant has been mentally incapacitated since the time immediately following the accident.
We are of the opinion that the trial court's judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur. *Page 446