(119 So. 647)

**THAGGARD v. VAFES.** (6 Div. 178.)

Supreme Court of Alabama. Nov. 22, 1928.

Rehearing Denied Jan. 24, 1929.

610

Thos. J. Judge and W. E. Howard, both of Birmingham, for appellant.

S. R. Hartley, of Birmingham, for appellee.

BROWN, J. This action is by the administratrix of the estate of Leon W. Hylton, deceased, against the appellant for wrongfully causing his death. Code of 1923, § 5696.

The counts of the complaint, A and B, on which the case was tried, in substance, aver that on and prior to the 26th day of August, 1926, the defendant was a practicing physician in the city of Birmingham, Alabama, and as such undertook for a reward to treat the plaintiff's intestate for an illness or disease of which he was then suffering, and that the defendant so negligently conducted himself in that regard that plaintiff's intestate died as a proximate consequence of defendant's negligence.

While the authorities are agreed that a mere breach of contract is not a wrongful or negligent act, within the meaning of the statutes giving a right of action for wrongfully causing death, yet they are also agreed that the negligent or tortious breach of a duty to the person whose death is caused thereby is within the statute, though such duty arises out of contract. Peck v. Henderson (Ala. Sup.) 118 So. 262;[1] 17 C. J. 1204, § 54; Blackburn's Adm'r v. Curd, 106 S. W. 1186, 32 Ky. Law Rep. 789; Randolph's Adm'r v. Snyder, 139 Ky. 159, 129 S. W. 562; 38 Cyc. 426; Dice's Adm'r v. Zweigart's Adm'r, 161 Ky. 646, 171 S. W. 195, L. R. A. 1916F, 1155.

The relation of physician and patient is not necessarily contractual, but may be consensual merely, and whether one or the other, when the physician assumes and undertakes to act in this relation, he incurs the consequent duty, exacted of the relation, that in the practice of the profession he will exercise that reasonable and ordinary care, skill, and diligence exercised generally by, members of his profession in the same neighborhood, and a failure to observe this degree of care and diligence is negligence. This rule is elementary, and has its foundation in most persuasive considerations of public policy. Talley v. Whitlock, 199 Ala. 28, 73 So. 976; Robinson v. Crotwell, 175 Ala. 194, 57 So. 23; Carpenter v. Walker, 170 Ala. 659, 54 So. 60, Ann. Cas. 1912D, 863; 21 R. C. L. 375, §§ 22, 23, 26.

The averments of counts A and B allege sufficient facts to show that the defendant was under duty to exercise this degree of care and diligence, and a breach thereof, with proximate resulting injury, and the demur-

[1] Ante, p. 233.

rers were overruled without error. Talley v. Whitlock, supra.

■ The evidence shows without dispute that the defendant undertook to treat Hylton as a patient, and in so doing administered to him, hypodermatically, a quantity of neosalvarsan or 606, which contained arsenic, a deadly poison; that this medicine was given without an examination of the patient's kidneys or urine by the defendant in his diagnosis; and plaintiff offered testimony of a physician residing in the same neighborhood, conceded to be qualified as an expert witness, which tended to show that such treatment was ill-advised and dangerous, if the patient had any symptoms showing that he was suffering from inflammation of the brain; and, if there were such symptoms, they were readily discoverable by an examination of the patient's heart, lungs, kidneys, pulse, and general condition. There was also evidence going to show that the dose was administered on Thursday, and on Sunday following the patient became desperately ill, and died; that before his death he developed marked symptoms of inflammation of the brain and arsenic poisoning; that such result would follow from the administering of neosalvarsan, if administered to a patient that was not in such condition as to react therefrom, or in too great quantity.

After these symptoms developed in Hylton's case, other physicians were called by his sister, and they refused to treat the patient without the presence of the defendant. Under these circumstances the court ruled without error in overruling the motion of the defendant to exclude the statement of the witness, Mrs. Vafes, that she called the defendant four or five times during the day and begged him to come. This evidence, in connection with the previous statement of the witness, that she had phoned to the defendant and informed him of the desperate condition of the patient, and his failure to come, and the further testimony that he did not come until she sent a car after him, and arrived only a short time before the patient died, tended to show a culpable disregard of his duty and a lack of interest in the patient's welfare.

■ It was permissible for the witness, Dr. Elkourie, to testify, after examining the patient, that his condition could have been brought about by arsenic poisoning. Carpenter v. Walker, supra.

■ At the time the hypothetical question was put to Dr. Elkourie on cross-examination by defendant's counsel, made the predicate for assignment of error 5, the facts hypothesized had not been developed by the evidence before the court, and the objection to this question was sustained without error. Pullman Co. v. Meyer, 195 Ala. 397, 70 So. 763; Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 So. 604.

■ Nor can error be affirmed in the court's overruling the general objection to the question put to the witness Elkourie:

"If Dr. Thaggard had gone out there when he was first called at 10 o'clock in the morning, could he have done anything to have saved his life?"

See Carpenter v. Walker, supra; Bates v. Morris, 101 Ala. 282, 286, 13 So. 138; Clark v. State, 217 Ala. 229, 115 So. 295.

■ The witness, Dr. Vafes, testified that he was a practicing dentist, and had practiced since 1913, a graduate of a dental college, and in the study of his profession he had substantially the same course in chemistry and the effect of drugs on the human system as is given to physicians, and as the result of his study and practice he knew the effect of arsenic on the human body. This, under the decisions of this court, qualified him to testify as an expert, leaving the weight of his testimony to the jury. Sov. Camp W. O. W. v. Screws, ante, p. 599, 119 So. 644; Tullis v. Kidd, 12 Ala. 648.

■ Chemists and physicians, who are qualified by study and experience, may testify as to the nature of poison and its effect on the system, and where they have examined and observed the patient may give their opinions as to whether or not death was caused by poison. Mitchell v. State, 58 Ala. 417; Rash v. State, 61 Ala. 91; Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A. L. R. 840; Clemons v. State, 167 Ala. 20, 52 So. 467. The testimony of Dr. Vafes goes to show that, from study, observation, and experience in the practice of his profession, he had acquired a knowledge not possessed by one not so experienced as to the effect of arsenic on the human system, and the objection to the question, "Do you know what killed him?" and the motion to exclude the answer, were overruled without error. Though the answer came in form as a statement of fact, the cross-examination clearly shows it nothing more than the opinion of the witness, which he was qualified to express.

■ The answers to questions put to the witness Dr. Payne on cross-examination by plaintiff's counsel, and made the basis of assignments of error 9, 10, 11, and 12, were favorable to appellant, and, if error intervened here, it was clearly without injury, though we are of opinion that this inquiry was pertinent to the issues in the case.

■ The evidence presented a jury question, and the affirmative charge, as well as the like charges as to the different counts, was refused without error.

■ We are clear to the conclusion that it cannot be declared, as a matter of law, that a physician may rely upon the diagnosis of another, no matter how skilled, in administering drugs, in the treatment of diseases, that contain a deadly poison. The patient was entitled to have the benefit, judgment,

and skill of the physician he had selected, formed from his own diagnosis. For these reasons, charges X and Y were well refused. Robinson v. Crotwell, supra. These charges were well refused for another reason. They ignore the evidence tending to show that plaintiff's intestate was not the person examined by Dr. Donald.

There was evidence tending to show that the defendant was called at 10 o'clock a. m., and was informed that his patient was desperately ill; that other physicians who were afterwards called refused to treat the patient in the absence of the defendant; that he did not attend the patient, though repeatedly called, until about 7 o'clock p. m., a short time before his death. One of the professional witnesses testified: "If he had gone at 10 o'clock, he could have done something. I don't know whether he could have saved his life or not. This question of life is hard to answer." In the face of this evidence, we are of opinion that charge B. was well refused as invasive of the province of the jury, and for the same reason charge D was refused without error.

Under the evidence, we cannot affirm error in the court's ruling on the motion for a new trial. Horn v. Pope, 205 Ala. 127, 87 So. 161.

We have examined and treated all questions presented and argued, and find nothing that warrants a reversal of the judgment of the circuit court.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.