This suit arises out of an accident involving a tractor trailer driven by Brannon and owned by the B.F. Goodrich Company, and a Volkswagen automobile in which the plaintiff Sharp was a passenger. The plaintiff brought suit for injuries arising from the accident; the jury returned a verdict in favor of the plaintiff in the amount of $400,000. The defendants do not challenge the jury's finding of liability for the accident; their only contentions are that a psychologist was improperly allowed to testify as to medical causation and damages, and that, absent this testimony, the plaintiff failed to present any evidence of damages.
Sharp claims to suffer debilitating headaches, which he contends were caused by the accident. As part of his case in chief, Sharp called Dr. Vernon Pegram, a licensed psychologist. Dr. Pegram testified as follows:
 "Q. Dr. Pegram, I would like to ask you, and I will ask you based upon your treatment of Nathaniel Sharp and based upon his failure to respond to biofeedback and based upon his condition now as opposed to when you first started seeing him, and further assuming that prior to the date of this automobile wreck Nathaniel was symptom free; assuming those are the facts in the case and based upon those facts, do you have an opinion as his psychologist as to whether or not the problems, the chronic pain problems that you are treating Nathaniel for were caused by the motor vehicle accident that he was in in August of '85?
 "MR. JOHNSON: Your Honor, we object again. It states under Alabama law — we just don't believe this witness is competent to answer that question.
 "THE COURT: Make sure in your question that you are limiting it to eliciting his opinion as a clinical psychologist and whatever psychological problems that the doctor may or may not feel that this patient has relates to the automobile accident. We have got to stay out of the field of medicine because the law says that we've got to.
 "MR. MARSH: Here's what I'd like to do if this is acceptable. He's treated him for the chronic pain, and that is what he is testifying to, and I would like to limit *Page 952 
it to his opinion regarding when the pain is caused by the motor vehicle accident, is that acceptable?
 "THE COURT: I'm going to sustain the objection to the last question. You ask the next one the way you feel that you should.
"MR. MARSH: All right.
 "Q. Dr. Pegram, you've just gone over the symptoms that you treated this man for; is that correct?
"A. Yes.
 "Q. And I would ask you to assume that prior to the date of the motor vehicle accident which was August of '85, that Nathaniel Sharp was symptom free, he was working full-time, and a regular wage earner, was not suffering from the type of pain and severity of pain that you are treating him for. Assuming those facts and further assuming the result, taking into consideration the result of your MMPI tests and your subjective interviews and tests with him, do you have an opinion as a psychologist in the field of psychology as to [whether] the chronic pain problem you have related to the jury was caused by or related to the vehicle accident?
 "MR. JOHNSON: Same question, Your Honor, I have the same objection to it.
 "THE COURT: I'll overrule. I will let you express an opinion, Doctor. But, first, he is asking you do you have an opinion. That would require a yes or no. Then he will ask you another question.
"A. I have an opinion.
"Q. What is that opinion?
"A. I believe that there was a cause and effect.
"Q. Between the motor vehicle accident and this?
"A. Yes."
At another point in the trial, Dr. Pegram testified on the issue of damages as follows:
 "Q. In your opinion as his psychologist, would headaches of the intensity of the type that are depicted in this exhibit interfere with his ability to function full time, that is, carry on a job full time on a forty-hour week?
 "MR. JOHNSON: Same objection. That is, it calls for a medical conclusion.
"THE COURT: I overrule.
"A. Yes."
The appellants, Brannon and B.F. Goodrich, argue that Dr. Pegram's testimony was improperly allowed, in direct violation of § 34-26-1(b), Alabama Code 1975, which states:
 "The psychologist who engages in psychotherapy must establish and maintain effective intercommunication with a psychologically oriented physician, usually a psychiatrist, to make provision for the diagnosis and treatment of medical problems by a physician with an unlimited license to practice the healing arts in this state. A psychologist must not attempt to diagnose, prescribe for, treat or advise a client with reference to problems or complaints falling outside the boundaries of psychological practice." (Emphasis added.)
The appellants also cite the case of Kriewitz v. SavoyHeating Air Conditioning Co., 396 So.2d 49 (Ala. 1981), to support their position that a psychologist may not testify as to medical facts, and they contend that, absent Dr. Pegram's testimony, Sharp failed to prove either causation or disability.
We disagree. In Kriewitz the psychologists in question were not allowed to testify as to the medical causation of the plaintiff's injuries. In the present case, Dr. Pegram was asked questions concerning the cause-and-effect relationship between the accident and Sharp's chronic pain; he was not asked about medical causation. Similarly, on the issue of damages, Pegram was asked questions specifically limited to the field of psychology.
In this case, Sharp was referred to Dr. Pegram by his medical doctor in order to attempt to bring his pain under control. Dr. Pegram, who specializes in chronic pain problems, had treated Sharp for over two years prior to trial. In Fabianke v. Weaver,527 So.2d 1253 (Ala. 1988), this Court found that it was not an abuse of discretion for the trial court to allow a psychologist to *Page 953 
testify concerning the possible connection between complications at birth and the later condition of the plaintiff. In the present case, Dr. Pegram testified that, based upon Sharp's testimony that Sharp did not have headaches before the accident and that he did have them after the accident, Dr. Pegram believed there was a cause and effect between the two. Under the facts presented in this case, it was not error to allow Dr. Pegram to testify concerning Sharp's headaches.
 "The question of whether a witness is qualified to render expert testimony is a question traditionally left to the sound discretion of the trial court, and the decision of the trial court will not be disturbed on appeal unless this court finds that the trial court abused its discretion."
Bell v. Hart, 516 So.2d 562 (Ala. 1987); Meadows v. Coca-ColaBottling Co., 392 So.2d 825 (Ala. 1981).
Although we hold that the trial court did not abuse its discretion in allowing Dr. Pegram to testify, we must reiterate that Dr. Pegram was specially qualified to testify in this case. Sharp was referred to Dr. Pegram by his treating physician, and Dr. Pegram had treated Sharp for a significant period prior to trial. We also note that Sharp's attorney, in the formulation of his questions, was particularly careful not to cross the line into the area of medical expertise.
After a review of the record, we find no merit in the appellant's other arguments on appeal. The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.