626 So.2d 1297 (1993)
Brenda G. TIDWELL, as administratrix of the Estate of James L. Tidwell, deceased
v.
The UPJOHN COMPANY.
1920265.
Supreme Court of Alabama.
September 10, 1993.
Rehearing Denied November 5, 1993.
*1298 Stephen D. Heninger of Heninger, Burge & Vargo, Birmingham, for appellant.
Stephen E. Scheve of Shook, Hardy & Bacon P.C., Kansas City, MO, and Warren B. Lightfoot and John M. Johnson of Lightfoot, Franklin, White & Lucas, Birmingham, for appellee.
PER CURIAM.
Brenda G. Tidwell, as administratrix of the estate of her husband, James L. Tidwell, appeals from the summary judgment entered in favor of the Upjohn Company in her action against it, St. Vincent's Hospital ("St. Vincent's"), and Dr. Lamar Ager following her husband's suicide while a patient at St. Vincent's. The trial court entered a summary judgment in favor of Dr. Ager and entered a judgment based on the jury's verdict in favor of the hospital. Brenda Tidwell does not appeal from either of those judgments.
Pursuant to the Alabama Extended Manufacturer's Liability Doctrine, Brenda Tidwell alleged in her complaint that Upjohn had negligently manufactured, marketed, and distributed the drug Halcion, which James Tidwell had been taking immediately before his death. She also alleged 1) that Upjohn had wantonly manufactured, marketed, and distributed Halcion; 2) that it had negligently and wantonly failed to provide adequate warnings regarding the use of Halcion; and 3) that it had committed fraud, misrepresentation, and deceit in its development and marketing of Halcion. The sole issue on appeal is whether the deposition testimony of Mrs. Tidwell's two proffered experts, James O'Donnell, a pharmacist and pharmacologist, and Dr. Lyle Rossiter, a psychiatrist, was sufficient to establish proximate cause.
*1299 On Monday, February 22, 1988, after having had trouble sleeping for several nights, Mr. Tidwell consulted his family physician, Dr. Joseph Welden, saying that he had not been feeling well for about six weeks. Dr. Welden prescribed .25-milligram dosages of Halcion, a sleep-inducing drug, which Mr. Tidwell began taking that night. Mr. Tidwell returned to Dr. Welden on Thursday, February 25, 1988, because he was still sleeping fitfully. At that point, Dr. Welden surmised that, if there was not an organic explanation for Mr. Tidwell's problems, he could be suffering from major depression. As a result, Dr. Welden had Mr. Tidwell admitted to St. Vincent's that day to be tested for a possible tumor and to see if there was a physiological explanation for his problems. After the tests came back normal, Dr. Welden referred Mr. Tidwell to Dr. Ager, a psychiatrist, whose initial impression was that Mr. Tidwell was severely depressed. His opinion was that Mr. Tidwell was suffering from major depressive syndrome, and he increased Mr. Tidwell's dosage of Halcion to .5 milligrams. Mr. Tidwell took this amount on Friday evening and, according to the nurse's notes, was afterwards feeling better and was walking in the hall with his wife.
Mrs. Tidwell visited her husband on Saturday morning and brought a couple of newspapers for him to read. Although Mr. Tidwell attempted to look at one of them, he became frustrated and threw it on the floor, declaring that he thought he was "losing [his] mind." After a nurse brought his breakfast to him, Mr. Tidwell ate a few bites, picked up his coffee cup, went into the bathroom, and locked the door. Immediately after he entered the bathroom, Mr. Tidwell shot himself in the head with a handgun taken from his travel bag.
Mrs. Tidwell contends that the increased dosage of Halcion caused her husband to kill himself and that Upjohn failed to warn physicians properly of the effects of a .5-milligram dosage of Halcion. To prove causation, Mrs. Tidwell offered the deposition testimony of Mr. O'Donnell and Dr. Rossiter. Upjohn contends that the testimony of both was insufficient to establish causation. Specifically, Upjohn argues that Mr. O'Donnell was not competent to testify as an expert in this case because he is not a medical doctor and that, even if he were, he still would not qualify because, by his own admission, he had insufficient knowledge regarding Halcion and its use.
The trial court's order granting Upjohn's motion for summary judgment reads:
"1. The testimony of Mr. James O'Donnell is allowed and considered for the purpose of proving the pharmacologic properties of Halcion and on the question of warning. The testimony of Mr. O'Donnell is disallowed, however, insofar as it purports to render opinions concerning the cause of death of Mr. Tidwell or the question of whether the ingestion of Halcion caused Mr. Tidwell's death.
"2. The admissible medical/psychiatric testimony concerning causation, especially that of Dr. Rossiter being considered in the light most favorable to plaintiff suggests, at best, the mere possibility that Halcion was a contributing cause of Mr. Tidwell's death."
The trial court's summary judgment in favor of Upjohn was appropriate if there was no genuine issue of material fact and if Upjohn was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. Once Upjohn made a prima facie showing that it was entitled to a judgment, the burden shifted to Mrs. Tidwell to present substantial evidence supporting her position and creating a genuine issue of material fact, to withstand the granting of Upjohn's motion. Hilliard v. City of Huntsville Electric Utility Board, 599 So.2d 1108 (Ala.1992). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); Ala.Code 1975, § 12-21-12.
Proximate cause is an essential element of Mrs. Tidwell's prima facie case of negligent failure to adequately warn. See Kelly v. M. Trigg Enterprises, Inc., 605 So.2d 1185 (Ala.1992); Gurley v. American Honda Motor Co., 505 So.2d 358 (Ala.1987); *1300 E.R. Squibb & Sons, Inc. v. Cox, 477 So.2d 963 (Ala.1985). It is also an essential element of her other causes of action against Upjohn: wantonness and fraud. Thus, the sole issue on appeal is whether the testimony offered by Mrs. Tidwell was "substantial evidence" that Mr. Tidwell's treatment with the drug Halcion at a dosage of .5 milligrams proximately caused him to commit suicide.
A ruling on the admissibility of expert testimony is largely within the discretion of the trial court and will not be overturned unless there has been an abuse of discretion. Bell v. Hart, 516 So.2d 562 (Ala. 1987); Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972). The purpose of expert testimony is to aid the trier of fact where the subject matter is beyond the ken of the average juror. Ex Parte Hill, 553 So.2d 1138 (Ala.1989); Thompson v. Jarrell, 460 So.2d 148 (Ala.1984). Thus, where a witness has sufficient "knowledge, skill, experience, or training ... that his opinion will be considered in reason as giving the trier of fact light upon the question to be determined" it should be admitted as expert testimony. Ellingwood v. Stevens, 564 So.2d 932 (Ala. 1990), citing, C. Gamble, McElroy's Alabama Evidence, § 127.01(5) (3d ed. 1977). A critical distinction in this case is that an objection to testimony of a competent expert based on the witness's lack of knowledge goes to the weight of the evidence and not its admissibility. See Ellingwood, supra; Thaggard v. Vafes, 218 Ala. 609, 119 So. 647 (1929); Pollard v. State, 549 So.2d 593 (Ala.Crim.App. 1989).
This is not a medical malpractice case. Mrs. Tidwell's claim against Upjohn is based on the Alabama Extended Manufacturer's Liability Doctrine, Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976); Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976). See Ala.Code 1975, § 6-5-500 et seq. While expert testimony of a physician is required in a medical malpractice case in order to determine the proper medical standard of care, Levesque v. Regional Medical Center Board, 612 So.2d 445 (Ala.1993), the testimony of a medical doctor is not required in order to prove causation relating to the effects of drugs or toxins. See Bell v. Hart, supra; Police & Fireman's Ins. Ass'n v. Mullins, 260 Ala. 173, 69 So.2d 261 (1953); Thaggard, supra. In Bell, this Court cited with approval a passage from Rodriguez v. Jackson, 118 Ariz. 13, 574 P.2d 481 (Ariz.App.1977), clearly stating that a witness need not be a physician to testify as to medical causation.
Upjohn contends that the trial court was correct in ruling that Mr. O'Donnell was not qualified to render an expert opinion on whether the increased dosage of Halcion proximately caused Mr. Tidwell to kill himself, because Mr. O'Donnell is not a physician. However, Upjohn, in its brief to this Court, acknowledges that the issue of causation in this case relates to Mr. O'Donnell's expertise in pharmacology. Upjohn stated that "[t]he complex issues of medical causation [in this case] turn on testimony relating to psychopharmacology, pharmokinetics, epidemiology, and psychiatry" (emphasis added).
Mr. O'Donnell is a pharmacist and pharmacologist with a Pharm.D. degree from the University of Michigan. He is the editor-in-chief of a professional pharmacy journal, has served as the assistant director of pharmacy at a Chicago hospital for 12 years, and has been an assistant professor of pharmacology at a Chicago medical school. The trial court considered him to be an expert on the pharmacologic properties of Halcion. Mr. O'Donnell testified that he possesses expertise in the area of pharmacologic toxic effects of benzodiazepines such as Halcion.
Given Mr. O'Donnell's education, experience, study, and background in pharmacology, we conclude that he had sufficient knowledge to testify as an expert on the issue of whether Halcion ingestion at a dosage of .5 milligrams contributed to Mr. Tidwell's suicide. Further, the trial court abused its discretion in ruling that only the testimony of a medical doctor could be considered on that issue.
Although this Court held in Phillips v. Alamed Co., 588 So.2d 463 (Ala.1991), that it was not an abuse of discretion for a trial court to rule that a medical doctor, rather than a registered nurse, was required to *1301 render expert testimony on a medical causation issue in a medical malpractice case, we have also held that the opinion of dentists or chemists, who receive training similar to that received by physicians on the effects of drugs on the human body, is admissible as expert testimony on that issue. Thaggard, supra. This Court has also allowed a toxicologist to testify as to the effect on the human body of exposure to carbon monoxide. Mullins, supra. Therefore, because Mr. O'Donnell has sufficient expertise in pharmacology to assist a jury in making its determination of whether Halcion ingestion was a contributing factor in Mr. Tidwell's suicide, the trial court erred in holding that his testimony was inadmissible on the issue of causation.
The trial court further ruled that a judgment in favor of Upjohn was proper because, without Mr. O'Donnell's testimony, Mrs. Tidwell had presented no substantial evidence that ingestion of Halcion proximately caused Mr. Tidwell's suicide. However, when Mr. O'Donnell's expert testimony is combined with that of Mrs. Tidwell's other expert, Dr. Rossiter, this burden is met.
On issues of medical causation a showing of probable cause, rather than possible cause, must be made. See Willard v. Perry, 611 So.2d 358 (Ala.1992). The pertinent portions of Dr. Rossiter's deposition testimony read:
"Q. [By Mrs. Tidwell's lawyer]: So what are the only reasonable medical factors that you see as having a contribution to or a possible or potential contribution to Mr. Tidwell's suicide?
". . . .
"A. Major depression and the effects of Halcion.
". . . .
"Q. What are the factors or events that you can point out to us as suggesting the involvement of Halcion acting either independently or in conjunction with Mr. Tidwell's major depression which would be associated with his suicide?
". . . .
"A. Dr. Welden's admission note mention of amnesia and memory disturbance suggest[s] a possibility of influence of Halcion. Mrs. Tidwell's description of her husband having difficulty getting his thoughts together, his agitation, subjective distress, his weakness on the morning of the 27th, all suggest the possibility that Halcion may have played a role in this case.
". . . .
"Q. If you assume for the purposes of my question that for the four days preceding February 26, 1988, Mr. Tidwell had been on a prescription of .25 milligram of Halcion, and assume further for the purposes of my question that on February 26, the evening of February 26, that dosage was increased to .5 milligram and assume further he made the statement as related by Mrs. Tidwell that on Saturday morning he looked at her and said, `I think I'm losing my mind,' do you see as a forensic psychiatrist any temporal relationship or the potential for a temporal relationship between that statement and the increased dosage of Halcion?
". . . .
"A. Well, there is, of course, a temporal relationship. The prescription and the administration of .5 milligram of Halcion preceded the patient's statement, `I think I'm losing my mind.' Just on the basis of a temporal relationship alone, I can't establish causation, but I do note the relationship. Since the administration of the medication preceded the statement as opposed to following the statement, it's possible that the medication contributed to the patient's subjective distress that resulted in him making that statement.
". . . .
"Q.... I'm asking you about the combination of two causes that you have described earlier. And you told us that to a reasonable degree of medical certainty you cannot extricate Halcion's involvement; is that correct?
". . . .
"A.... I can only say that if there was some contribution from Halcion, it would have merged with the subject of distress that the patient experienced with his major depression and added to it.

*1302 "Q. So do you have an opinion as to whether the major depression and its overlapping with the effects of Halcion as you described in your last answer would have combined or coalesced in the suicide?
". . . .
"A. I have an impressionan opinion as to whether it could have. I don't know whether it did. It could have.
"Q. Is there any test known in medical science that you are aware of that could take a completed suicide and then establish what part a major depression with its overlapping of effects of Halcion played in a relative proportion?
"A. No.
"Q. Is there anyone you know of that could make such an analysis?
"A. No."
Although the trial court was correct to note that Dr. Rossiter, a psychiatrist, testified only that ingestion of Halcion was possibly a contributing cause of Mr. Tidwell's suicide, he also testified that the only reasonable medical factors that could have contributed to Mr. Tidwell's suicide were his major depression and ingestion of the drug Halcion. Moreover, Mr. O'Donnell testified that, in his opinion as a pharmacologist, the ingestion of Halcion at a dosage of .5 milligram was a "significant contributing event" leading to Mr. Tidwell's suicide:
"Q. [Lawyer for St. Vincent's]: Now as I understand it, you are going to offer an opinion that Halcion somehow contributed to Mr. Tidwell's death in this case?
"A. Yes.
"Q. And is it an opinion you hold as a pharmacist or as a pharmacologist or as what?
"A. As a pharmacologist and a pharmacist.
"Q. And what mechanism came into play under your theory that Halcion contributed to cause Mr. Tidwell's death?
"A. By my review of the medical reports and description of the behavior of Mr. Tidwell by his wife, there [was] a worsening of his depression and psychiatric illness with several symptoms and signs that are consistent with Halcion toxicity as well as signs and symptoms of depression, and consistent with a temporal relationship of the administration of the Halcion plus the administration of the Xanax, which has to be considered, and an exacerbation of those symptoms with an increasing of the dose of the Halcion from .25 to .5 [milligram]. In my opinion within reasonable pharmacological probability, the Halcion contributed to his suicide.
". . . .
"Q. Now what is it, sir, that you rely upon to develop an opinion to a reasonable degree of scientific certainty that the deterioration of Mr. Tidwell's psychiatric symptoms were more likely caused by the Halcion than caused by the psychiatric condition itself?
"A. I am not saying it's more likely caused by the Halcion than by the psychiatric condition itself. I'm saying that they are inextricably tied together and that by virtue of the temporal relationship the exacerbation of symptoms related to the use of Halcion and the dosage increase, in my opinion, the Halcion would have been a contributing factor in that exacerbation and deterioration."
When questioned by Mrs. Tidwell's lawyer, Mr. O'Donnell testified similarly:
"Q.... [A]ccording to your education, training and experience in pharmacy and pharmacology as you described earlier..., do you have an opinion as to whether the administration of the .5-milligram dosage to Mr. Tidwell was a contributing factor or a significant contributing factor in his suicide?
". . . .
"A. In my opinion, the Halcion was a contributing, significant contributing event to the suicide. And I hold that opinion with reasonable pharmacological certainty and reasonable pharmacological probability."
This testimony is supported by internal Upjohn documents that question the safety of the .5-milligram dosage of Halcion. Accordingly, viewing this evidence in a light most *1303 favorable to Mrs. Tidwell, we conclude that she has presented "substantial evidence" of probable causation, and we conclude that the summary judgment in favor of Upjohn must be reversed.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
STEAGALL, Justice, dissenting.
I must respectfully dissent. Although I agree with the majority that Mr. O'Donnell was qualified to render expert testimony on the issue of causation, neither his testimony nor that of Dr. Rossiter provides the requisite substantial evidence that Mr. Tidwell's ingestion of Halcion proximately caused his death. As O'Donnell's testimony reflects, the most he would say was that Halcion contributed to Mr. Tidwell's death. When the lawyer for St. Vincent's asked O'Donnell whether he could say to a reasonable degree of pharmacologic certainty that the deterioration of Mr. Tidwell's psychiatric condition was more likely caused by the Halcion than by the psychiatric condition itself, O'Donnell said "No." Likewise, Dr. Rossiter refused repeatedly to say that Halcion probably caused Mr. Tidwell's suicide. See Willard v. Perry, 611 So.2d 358 (Ala.1992) (cited in the majority opinion) (probable cause rather than possible cause must be shown in medical causation situations).
In my opinion, the expert testimony here does not rise to the level required to establish substantial evidence of causation. Thus, the summary judgment in favor of Upjohn was proper and should be affirmed.
MADDOX and HOUSTON, JJ., concur.