SEE, Justice
(dissenting).
I respectfully dissent from the majority’s affirmance of the trial court’s judgment against Springhill Hospitals, Inc., and Randall Quinley (hereinafter referred to collectively as “Springhill”) under the Alabama Medical Liability Act, § 6-5-540 et seq., Ala.Code 1975 (“the AMLA”). The trial court entered its judgment after finding, in part, that the two expert witnesses who testified on Teresa Dixon’s behalf were “similarly situated health care providers” as that term is defined in the AMLA and, therefore, were qualified to provide expert-opinion testimony. Based on the standard of care allegedly breached in this case and the work experience of the two expert witnesses, I disagree.
I.
On June 11, 1998, Teresa Dixon was admitted to Springhill Memorial Hospital, a hospital owned by Springhill Hospitals, Inc., for a lumbar laminectomy — the removal of a herniated disk. Dixon underwent surgery based on the recommendation of her orthopedic surgeon, Dr. Suanne White-Spunner. Dixon had injured her back while working as a registered nurse, and she had been unable to work. Dixon testified that Dr. White-Spunner told her there was a 90-percent probability that the surgery would allow her to return to her nursing job.
During Dixon’s surgery, Dr. White-Spunner encountered excessive bleeding at the incision site and, in response, asked Quinley, the circulating surgical nurse, to obtain some epinephrine to help to control the bleeding. Dr. White-Spunner told Quinley that she did not know the proper dose and directed him to find out what the proper dose would be. Quinley never checked with any of the hospital resources available to him. He simply returned with a bottle of epinephrine in a 1:1,000 concentration and asked Dr. White-Spunner whether that dose was what she wanted. Quinley then diluted the concentration containing epinephrine with an equal amount of saline solution.
Dr. White-Spunner injected the epinephrine solution near the incision site. Upon receiving the dose of epinephrine, Dixon went into cardiac arrest; the operating-room staff then used a defibrillator to return Dixon’s heart to a normal rhythm. As a result of those complications, Dr. White-Spunner could not complete the surgery; she had to perform an emergency closure of Dixon’s back. Dixon has not undergone back surgery or returned to her nursing job since this incident.
Dixon brought a medical-malpractice action against Springhill Hospitals and Quinley, alleging that Quinley had negligently and/or wantonly administered an overdose of epinephrine. The AMLA required that Dixon present expert-opinion evidence regarding the standard of care Quinley allegedly breached in administering the epinephrine during the June 11, 1998, surgery. Dixon, in her capacity as a registered nurse, and Dick Navarro, R.N., served as Dixon’s expert witnesses during the jury trial. Dixon and Navarro each testified that a nurse, no matter what the hospital setting, must administer drugs to patients in accordance with what is known in the practice of nursing as the “five Rs” — right patient, right drug, right dose, right time, and right route.
The jury returned a verdict for Dixon, awarding her $175,000 in past compensatory damages, $62,000 in future compénsate- *161 ry damages, and $845,000 in punitive damages. Subsequently, Springhill moved for a judgment as a matter of law, or, alternatively, for a new trial or a remittitur, arguing, in part, that the trial court erred in permitting the expert testimony of Dixon and Navarro because, it said, they were not “similarly situated health care providers” within the meaning of the AMLA. The trial court denied the motion.
II.
On appeal, Springhill argues that the trial court erred in allowing Dixon and Navarro to provide expert testimony as to the standard of care allegedly breached by Quinley. Springhill argues that Dixon and Navarro were not qualified to provide expert testimony because, it says, they are not “similarly situated health care providers.” [1] “[Wjhether a witness is qualified to render expert testimony is a question traditionally left to the sound discretion of the trial court.” Bell v. Hart, 516 So.2d 562, 569 (Ala.1987). The trial court’s determination regarding the qualifications of a proffered expert witness will not be disturbed absent a showing that the trial court has exceeded its discretion. Id.
“A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he is a ‘similarly situated health care provider ....’” § 6-5-548(e), Ala.Code 1975. In determining whether an expert is a “similarly situated health care provider,” the trial court must answer the following three questions:
“(1) What is the standard of care alleged to have been breached? (2) Is the defendant ‘health care provider’ a specialist in the discipline or school of practice of the standard of care that the court has previously determined is alleged to have been breached? (3) Does the proffered expert qualify as a ‘similarly situated health care provider’ under the subsection determined in the second step to apply?”
Medlin v. Crosby, 583 So.2d 1290, 1293 (Ala.1991).
Dixon alleged that Quinley breached the applicable standard of care when he retrieved and prepared a potentially fatal dose of epinephrine for Dr. White-Spun-ner’s use during Dixon’s back surgery. Therefore, the standard of care alleged to have been breached is the standard of care that a nurse must follow when preparing a drug for a doctor’s use during surgery.
The next question is whether Quinley is a specialist in the discipline or school of practice covering the alleged breach. Medlin, 583 So.2d at 1294. The alleged breach in this case occurred while Quinley was practicing as a surgical nurse. Therefore, in this case, the discipline or school of practice in which the alleged breach occurred was surgical, or operating-room, nursing.
The facts do not indicate that Quinley is a specialist in the practice of surgical nursing. In order to be considered a specialist, the health-care provider must “(1) [be] board certified] as a specialist in the spe-ciality at issue; (2) [be] train[ed] and experience^] in the speciality at issue; and (3) hold[ ] himself out as a specialist in the speciality at issue.” Medlin, 583 So.2d at 1296 (emphasis added). Because he does not hold surgical-nursing or similar certification recognized by the American Board of Nursing Specialties, Quinley is not a specialist in surgical nursing.
*162 The only question remaining, therefore, is whether Dixon and Navarro are “similarly situated” to Quinley. Because Quin-ley is not a specialist in surgical nursing, § 6 — 5—548(b), Ala.Code 1975, applies. That section defines a “similarly situated health care provider” as one who:
“(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
“(2) Is trained and experienced in the same discipline or school of practice; and
“(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.”
It is undisputed that Dixon and Navarro are registered nurses with nursing licenses issued by the State of Alabama. Neither Dixon nor Navarro, however, has surgical-nursing experience. Although both Dixon and Navarro’s work experience is varied, neither one has ever worked in a surgical setting or in an operating room as a circulating nurse. Because they are not experienced in surgical nursing, the discipline or school of practice in which the alleged breach occurred, neither Dixon nor Navarro may be considered similarly situated to Quinley. Therefore, neither Dixon nor Navarro was qualified to provide expert testimony as to the applicable standard of care Quinley is alleged to have breached.[2]
III.
Because Dixon and Navarro are not experienced in the same discipline or school of practice in which the alleged breach occurred, and, therefore, were not qualified to give expert testimony as to the applicable standard of care in this case, I would reverse the trial court’s order denying Springhill’s motion for a new trial. See Mihelic v. Sullivan, 686 So.2d 1130 (Ala.1996) (defendant was entitled to a new trial because the trial court erred in permitting a medical expert to testify to matters beyond her qualifications).[3]

. Springhill made a motion in limine to strike Dixon's and Navarro's proposed expert testimony. The trial court denied the motion. Springhill renewed its objection at trial, thereby preserving the issue for appellate review.

. Apart from Dixon’s and Navarro's testimony, the record does not contain any qualified testimony that the five Rs apply to operating-room nurses.

. Springhill's witness, Susan Alford, R.N., called during Dixon's case-in-chief, did offer qualified testimony of another standard of care applicable to Quinley that Quinley may have violated.