881 So.2d 421 (2003)
USX CORPORATION
v.
Judith A. BRADLEY.
2010599.
Court of Civil Appeals of Alabama.
January 17, 2003.
*423 Neil Richard Clement and Paul D. Satterwhite of Lange, Simpson, Robinson & Somerville, LLP, Birmingham, for appellant.
Samuel Maples, Birmingham, for appellee.
CRAWLEY, Judge.
USX Corporation appeals from a judgment finding that Judith A. Bradley ("the worker") is permanently and totally disabled as a result of two on-the-job accidents and awarding her workers' compensation benefits accordingly.
The worker is a 51-year-old high school graduate who worked for USX from 1978 to 1980 and then from 1990 until April 26, 1999. The worker's first injury occurred while she was performing her job as a bander for USX. A bander uses a control panel to wind up a large coil of sheet steel and to "kick" the coil out of a coiling machine. The bander then uses air tools to "band" the coil with a steel band and to crimp the band so that the coil will not unwind. The bander then sends the coil down a ramp to be picked up by a crane. The coils weigh between 10,000 and 50,000 pounds.
On March 26, 1997, the worker was banding a coil of steel when another coil "looped out" of the coiling machine, came over the coil on which she was working, and struck the worker on her hard hat, knocking her to her hands and knees and knocking her hard hat off. The steel coiling continued to pile on top of her as she tried to hold it off with her hands. Eventually the coiling-machine operator stopped the line and the worker was dragged out from under the coiling, bleeding from her head and complaining of pain to her wrist and knee. She was taken to Lloyd Noland Hospital for treatment. The hospital record indicates that the worker suffered abrasions to her left knee and right forearm and a laceration to her scalp.
After the accident, the worker returned to light duty at USX for three months. She complained to coworkers and family members about pain in her wrist, and she wore a wrist brace at work. She had difficulty performing her duties as a bander because of pain in her wrist and an inability to lift the banding tools. On April 2, 1998, she consulted Dr. Donald W. Autry, an orthopedic surgeon, who noted that the worker had pain over the anterior margin of the ulnar side of the wrist. Dr. Autry ordered nerve-conduction studies to rule out an ulnar nerve entrapment, which would indicate carpal tunnel syndrome. Those studies indicated no evidence of entrapment. Dr. Autry, however, located a lipoma, or fatty tumor, on the ulnar nerve. On April 20, 1998, Dr. Autry performed surgery to remove the tumor and noted some scarring and inflammation around *424 the flexor tendons. He testified by deposition that it was possible that the scarring could have been caused by the worker's March 26, 1997, accident.
In June 1998, the worker was moved to the position of entry end operator at work, a job that did not require lifting; nevertheless, she continued to experience pain in her wrist. The worker testified that she cried at work all the time. Her coworkers testified that they began to notice a change in her personality, from friendly and outgoing to withdrawn and depressed. In June 1998, Dr. Autry referred the worker to Dr. Robert Craddock for a neurological evaluation. Dr. Craddock found no neurological deficit but gave the worker several injections for pain. Dr. Autry continued to treat the worker for complaints of wrist pain, and in February 1999, he ordered another nerve-conduction study. On February 9, 1999, he diagnosed the worker as suffering from carpal tunnel syndrome. On April 28, 1999, he performed a carpal tunnel release on the worker's right wrist. When Dr. Autry was asked during his deposition whether the worker's March 26, 1997, accident could have "caused or contributed" to her carpal tunnel syndrome, he answered, "Carpal tunnel syndrome is primarily a repetitive type of problem. But it can be caused by acute problems."
The worker returned to work after a period of recuperation from her carpal tunnel surgery, but she found that she was unable to perform her job duties without pain. She testified that she thought about suicide when she realized that she could not do her job anymore.
The worker's second work-related injury occurred on September 2, 1998, when she stepped into a depression in the floor and fell, fracturing her left lower leg and ankle. She was out of work until January 12, 1999, at which time Dr. Joe Gerald, an orthopedic surgeon, assigned her a 10 percent permanent partial impairment to her left foot. When the worker returned to work, she could no longer wear her regular-sized work boots. She had to wear a brace on her left leg and a larger boot. The worker said that she limped and could not perform her work duties as she had before the September 2, 1998, accident. In addition, she continued to have pain in her wrist. She also began to have panic attacks and was unable to drive. She worked only a few more months before she quit her job at USX on April 26, 1999.
The trial court rendered a judgment finding that, as a combined result of the March 26, 1997, and September 2, 1998, accidents, the worker suffered physical and psychological injuries that rendered her permanently and totally disabled. USX presents three issues on appeal from that judgment.

I. The Standard of Proof for Carpal Tunnel Syndrome

USX first argues that the trial court applied the wrong standard of proof to the worker's claim for disability benefits on account of her right carpal tunnel syndrome. It claims that the trial court failed to apply the clear-and-convincing standard of proof as it was required to do by § 25-5-81(c), Ala.Code 1975. That section states:
"The decision of the court shall be based on a preponderance of the evidence as contained in the record of the hearing, except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment."
Citing § 25-5-1(9), Ala.Code 1975, USX contends that carpal tunnel syndrome is a *425 "cumulative trauma disorder" for which the clear-and-convincing standard of proof applies. Section 25-5-1(9) states, in pertinent part:
"Injury shall include physical injury caused either by carpal tunnel syndrome disorder or by other cumulative trauma disorder if either disorder arises out of and in the course of the employment...."
The Code definition of "injury" recognizes that carpal tunnel syndrome is usually classified as a "cumulative trauma disorder," or, as Dr. Autry put it, "a repetitive type of problem." But, as Dr. Autry also recognized, carpal tunnel syndrome "can be caused by acute problems." Cf. Thomas v. Elephant Run, 814 P.2d 496, 498 n. 5 (Okla.1991) (noting that "[a]lthough [carpal tunnel] syndrome is widely associated with occupations involving repetitive hand movements, its causes are varied, including one-time acute trauma to the wrist" (citing Armstrong, "An ergonomics guide to carpal tunnel syndrome," found in U.S. Department of Health and Human Services, Carpal Tunnel Syndrome Selected References (March 1989))). See generally Jay M. Zitter, "Workers' Compensation: Recovery for Carpal Tunnel Syndrome," Annot., 14 A.L.R. 5th 1, § 11 (1993).
The trial court specifically found that the worker's carpal tunnel syndrome was caused by an accident and not by repetitive trauma. The judgment states:
"Based on the testimony of the Employee, Dr. Autry's deposition testimony, and the Employee's witnesses, including co-employees Glen Weeks, Leslie Cox, and Ricky Bearden, along with the testimony of the Employee's husband, Danny Bradley, and various medical records, all of which the Court finds credible, the Court finds that the Employee suffered a permanently disabling right wrist injury as a result of the accident of March 26, 1997, that required surgery on April 20, 1998 and April 28, 1999."
Citing the preamble to the 1992 Workers' Compensation Act ("the Act"), as well as § 25-5-81(c) and the second sentence of § 25-5-1(9), Judge Pittman's dissent argues that the Legislature intended to classify carpal tunnel syndrome as a cumulative-physical-stress disorder subject to the clear-and-convincing standard of proof. The dissent maintains that although it is medically possible for carpal tunnel syndrome to arise from sudden trauma, it is not legally possible for carpal tunnel syndrome to be classified under the Act as anything other than a cumulative-physical-stress disorder. That argument is unpersuasive.
"In cases of doubt in respect to an ambiguous legislative context, the preamble of an act must be resorted to to ascertain the intent [of the Legislature] and resolve the doubt." Hamrick v. Thompson, 276 Ala. 605, 609, 165 So.2d 386, 390 (1964). The preamble to the Act makes it unmistakably clear that the Legislature meant to subject cumulative-stress or gradual-deterioration disorders to a higher standard of proof. In that context, and only in that context, the preamble mentions carpal tunnel disorder as an example of a disorder that should not be compensable unless it is clearly and convincingly established to be job-related. The Legislature simply did not mention its intent with regard to the proof requirement that must be met when carpal tunnel syndrome has been caused by an "accident," or an acute trauma.
"If the legislative intent is clearly expressed in the preamble, and the body of the act is so constructed as to render its meaning and intent uncertain; and if the act admits of two constructions, one in accord with the intent clearly expressed in the preamble, and the other in conflict *426 with it, courts should adopt that construction which harmonizes with the preamble."
White v. Levy, 91 Ala. 175, 177, 8 So. 563, 564 (1890).
Although most of our decisions have dealt with the repetitive-motion or cumulative-stress manifestations of carpal tunnel syndrome, those decisions do not preclude a finding that, in an appropriate case, the syndrome may be caused by an "accident arising out of and in the course of the employment," within the meaning of the first sentence of § 25-5-1(9). See Ogden Aviation Servs. v. Saghy, 32 Va.App. 89, 96, 526 S.E.2d 756, 759 (2000). In Saghy, the Virginia appellate court addressed the following question, which it stated was one of first impression:
"Because carpal tunnel syndrome has been treated as a cumulative trauma injury in numerous cases, and more recently the General Assembly has provided special coverage for the condition as an `ordinary disease of life' under Code § 65.2-401, we must determine whether the condition may also be compensable as an `injury by accident' when it is causally related to a single, identifiable accident."
Saghy, 32 Va.App. at 95, 526 S.E.2d at 759. The court concluded that carpal tunnel syndrome "may be compensable as an `injury by accident' or an `occupational disease,' depending on how it develops." 32 Va.App. at 98, 526 S.E.2d at 760. The court reasoned:
"`[Carpal tunnel syndrome], which is a condition that exhibits a characteristic set of symptoms caused by compression of the median nerve in the carpal tunnel, will qualify as a disease when it develops as the body's response to environmental factors, infective agents, or inherent defects of the body. [Carpal tunnel syndrome] may be caused by a number of precipitating factors or events, such as repetitive motion, cumulative trauma, obesity, rubella, pregnancy, rheumatoid arthritis, gout, and hypothyroidism, or a traumatic injury.'
"[Rocco Turkeys, Inc. v. Lemus, 21 Va.App. 503, 507, 465 S.E.2d 156, 158 (1996)] (citing 2 Cecil Textbook of Medicine 1563 (19th ed.1992))(emphasis added [in Saghy)]. Accordingly, we hold that carpal tunnel syndrome may qualify as an `injury by accident' under Code § 65.2-101 or as an `occupational disease' under Code § 65.2-401, depending upon its pathology or how it is incurred."
Id. (footnote omitted). The court explained that "[t]o hold otherwise would differentiate one type of injury by accident from all others, an outcome not sanctioned by the Act." Id.
This court has the duty to construe provisions within a statutory plan in harmony with each other. J.N.H. v. N.T.H., 705 So.2d 448 (Ala.Civ.App.1997). In interpreting statutory language, a court does not look at one word or one provision in isolation, but rather looks to a whole statutory scheme for clarification and contextual reference. United States v. McLemore, 28 F.3d 1160 (11th Cir.1994).
We find the Virginia court's reasoning compelling, especially its conclusion that to treat carpal tunnel syndrome as noncompensable if there has been no clear-and-convincing proof that is causally related to an "accident," would be to treat one type of job-related accidental injury differently from all others. Such a result is not permitted by the Act.
It is "settled that the trial court's findings on disputed evidence in a workers' compensation case are conclusive." Ex parte Ellenburg, 627 So.2d 398, 399 (Ala. *427 1993). The trial court's determination that the worker's carpal tunnel syndrome was the result of a one-time accident and not the result of repetitive trauma is supported by substantial evidence and is due to be upheld. Because the trial court determined that the worker's tunnel syndrome was not, in this case, the product of repetitive trauma, it was not required to apply the clear-and-convincing standard of proof.

II. Medical Causation of the Worker's Psychological Injury

To be compensable under the Act, a psychological injury must have been "produced [or] proximately caused by some physical injury to the body." § 25-5-1(9), Ala.Code 1975. See Goolsby v. Family Dollar Stores of Alabama, Inc., 689 So.2d 104 (Ala.Civ.App.1996). The physical injury, however, need not be "`the' proximate cause" but only "a contributing cause" of the psychological injury. See Ex parte Vongsouvanh, 795 So.2d 625, 626, 627 (Ala.2000); Marley Erectors, Inc. v. Rice, 620 So.2d 31 (Ala.Civ.App.1993). Cf. Ex parte Trinity Indus., Inc., 680 So.2d 262, 270 (Ala.1996) (stating that "to establish `medical causation' in a workers' compensation case, a claimant need only produce substantial evidence tending to show that the exposure to [an occupational] risk ... `was in fact [a] contributing cause of the injury'") (quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729, 732 (Ala.Civ.App.1975) (emphasis added in Trinity)); Ex parte Valdez, 636 So.2d 401, 405 (Ala.1994) (stating that "[t]o establish medical causation, the plaintiff need not show that the [occupational] hazard was the sole cause of the employee's condition, but rather that the hazard was a `contributing cause' of the injury. A hazard can be a contributing cause if it is one of multiple factors acting in concert to bring about the occupational disease" (citations omitted; emphasis added)).
USX contends that there was no evidence to support the trial court's determination that the worker's depression and panic disorder were "produced or proximately caused" either by her right carpal tunnel syndrome or by her left ankle injury. Instead, USX claims, those injuries were, at most remote causes of the worker's mental disability. In support of that argument, USX cites Nix v. Goodyear Tire & Rubber Co., 624 So.2d 641 (Ala.Civ.App.1993). In Nix, the worker was injured when a machine roller fell and struck her on the head. Seven months later, a co-employee was killed on the same machine. Following the co-employee's death, the worker suffered a disabling mental condition that was diagnosed as post-traumatic anxiety, panic disorder, severe depression, or organic mood disorder. 624 So.2d at 642. The trial court determined that the worker's mental disability was not compensable because it had been proximately caused by the death of the co-employee, not by the physical injury the worker herself sustained. In Nix, the trial court made the following findings:
"`This court finds, from all the evidence, that, but for the ... co-worker's death, the [worker] would not have sustained her present ... disabling mental condition. This court further finds, however, that, had the [worker] not sustained physical injury on the same machine in the same manner, earlier, she also would not have suffered her present disabling mental condition. Therefore, as best as this court can determine, both events contributed to her present mental condition. The court finds, however, that the "precipitating cause" and the proximate cause of her present mental condition and disability was the death of her close friend and co-worker on August 7, 1990, and that, while the physical *428 injury to the [worker] sustained some seven months earlier in January of 1990 was a contributing factor, it was not the proximate cause of her present mental condition and disability.'"
Nix v. Goodyear Tire & Rubber Co., 624 So.2d at 643 (emphasis added).
Nix was decided in 1993, before Valdez in 1994, Trinity in 1996, and Vongsouvanh in 2000. Valdez and Trinity clarified the test for medical causation and explained that "proximate cause" is not equivalent to "sole cause." Before Vongsouvanh was decided in 2000, there may have been some doubt about whether the Valdez-Trinity "contributing cause" standard applied to causation issues involving psychological injuries. Any doubt was settled, however, when Vongsouvanh was decided.
In Vongsouvanh, the worker was traveling with a co-employee to a work site when he lost control of the vehicle he was driving and hit a tree. He and the co-employee were pinned in the vehicle for several hours. The worker suffered hand and ankle injuries; the co-employee died. After the accident, the worker developed depression, chronic-pain syndrome, and reflex sympathetic dystrophy. The worker's psychiatrist testified that the worker was permanently and totally disabled as a result of the accident. The trial court denied the worker permanent-total-disability benefits because it determined that the worker's "physical injuries were not `the' proximate cause of his mental disorders." 795 So.2d at 626.
"Instead, the [trial] court concluded that the proximate cause of [the worker's] mental disorders `was and is the death of [his] co-employee and the guilt and remorse [he] feels as a result of being responsible for that death.'"
Id. This court affirmed. The Alabama Supreme Court reversed, stating that, "as in Valdez, multiple factors" combined to cause the worker's disability; that is, the worker's "mental disorders originated from both physical and emotional factors." 795 So.2d at 627 (emphasis added). The supreme court stated:
"[T]he trial court should have applied the `contributing-cause' standard set forth in Valdez. If the court had used this standard, the evidence in the record would have been sufficient for the court to conclude that Vongsouvanh's physical injuries were a contributing cause of his mental disorders."
795 So.2d at 627. We conclude that, if the holding in Nix was still viable after Valdez and Trinity, it certainly did not survive Vongsouvanh.
In Marley Erectors, Inc. v. Rice, 620 So.2d 31 (Ala.Civ.App.1993), the worker was injured in June 1987, when a piece of concrete struck the hard hat she was wearing. The worker developed neck pain and later, depression. Finding that the worker had suffered a "`severe psychological disability,'" 620 So.2d at 32, the trial court awarded her benefits for a permanent partial disability. On appeal, the employer argued that the worker had failed to show that the workplace accident was the proximate cause of her depression. In support of that argument, the employer pointed out that after the accident, the worker "held various jobs following the 1987 accident at a pay rate equal to or higher than her pay prior to the accident, [but] that in November 1988, one week after a romantic relationship ended, [the worker] was admitted to the hospital for treatment of depression." 620 So.2d at 34. This court affirmed the award of benefits, concluding that there was evidence to support the trial court's finding that the worker's physical injury was a contributing cause of her psychological injury, notwithstanding two significant facts: that there was a 17-month delay between the workplace *429 accident and the worker's treatment for depression, and that the worker's treatment for depression followed what appeared to be a material intervening event  the worker's breakup with her boyfriend.
In the present case, we conclude that there was substantial evidence to support the trial court's finding that the worker's physical injuries, sustained in on-the-job accidents of March 26, 1997, and September 2, 1998, were contributing causes of her mental disability. At trial, the worker's husband, daughter, and several coworkers testified that before the accident of March 27, 1997, the worker was a happy, friendly, active individual who enjoyed her work and worked hard. After the accident, however, the worker was withdrawn and depressed.
The worker testified that after both accidents she experienced pain and frustration at not being able to do her job. In addition to the pain in her wrist and foot that were the direct consequences of her work-related injuries, she also experienced lower back, shoulder, and elbow pain that may not have been work-related. Taken in the light most favorable to the worker, the evidence established that the chronic pain she experienced  a part of which was attributable to her work-related injuries  was a factor in bringing about her depression. The worker's husband, who was also a USX employee, testified that before her accidents, the worker was a good employee and "worked harder than any man" on the line. The worker's daughter, who came three or four times a week to do her mother's housework after the accidents, testified that before her mother's physical and psychological injuries, her mother had been an active and positive person, but after the injuries she was "like an 80-year-old woman." The worker's husband and daughter both testified to changes in the worker's personality and attitude after her injuries. The trial court was authorized to conclude that the worker's delay in receiving professional help for her depression and panic attacks stemmed not from the worker's attempt to "manufacture" a psychological injury from a remote physical injury, but from the worker's commendable attempt to work through her pain, both physical and psychological.
We hold that the worker presented substantial evidence as to the causation element of her compensation claim based on her psychological disabilities.
"[M]edical evidence of causation in a workers' compensation case, whether in the form of testimony or treatise excerpts, need only show that the work-related [injury] could have been a precipitating factor in bringing about the onset of the disease."
Ex parte Trinity Indus., 680 So.2d at 271 (footnote omitted).

III. The Admissibility of Testimony by the Worker's Vocational Expert

USX argues that the trial court erred by allowing the worker's vocational expert, Dr. William A. Crunk, to state his opinion that there was a causal connection between the worker's on-the-job accidents and her later depression and panic disorders. USX contends that Dr. Crunk was unqualified to render an opinion as to the medical cause of the worker's psychological disability because he was neither a medical doctor nor a psychologist.
Dr. Crunk testified that he has a master's degree in rehabilitation, a doctorate in vocational rehabilitation, and that he is board-certified as a rehabilitation counselor and evaluator. In response to USX's objection that he was not qualified to state his opinion as to the cause of the worker's psychological problems, Dr. Crunk stated:

*430 "[U]nder my licensing, I am qualified to give an impression psychologically. That is a part of my training. I am licensed not only in the field of counseling but also as a therapist...."
Rule 702, Ala. R. Evid., states:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
Whether a witness is qualified as an expert on a particular subject and, if so, whether the witness may express an opinion on the subject, are largely within the discretion of the trial court, and the court's judgment on those questions will not be reversed in the absence of an abuse of discretion. See Knapp v. Wilkins, 786 So.2d 457 (Ala.2000). Experience and practical knowledge may qualify one to make technical judgments as readily as formal education. Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala.2000).
The Alabama rule concerning the necessity of expert testimony on the medical causation of psychological injuries is stated in Moore's treatise on workers' compensation:
"Since the existence, nature, severity, duration, and cause of psychological injuries are not commonly perceived by lay persons, expert testimony should be used to verify or substantiate a claim of mental injury in most cases. Such testimony is not a prerequisite to a finding of compensability in all cases, however. In appropriate circumstances, an award may be made for mental disability even though medical testimony relating to its existence or cause is inconclusive, or even nonexistent. For example, in Federal Mogul Corp. v. Campbell, [494 So.2d 443 (Ala. Civ.App.1986),] the court held that the existence of a mental disability and its causal link to the employee's occupation may be established in the absence of clear expert opinions by lay testimony showing that the employee behaved normally and could perform his job before the accident and exhibited bizarre emotional behavior immediately afterwards that interfered with or precluded him from being able to work."
1 Terry A. Moore, Alabama Workers' Compensation § 6:15 at 180-81 (1998) (footnotes omitted).
The worker's medical and psychological records were admitted without objection at trial. Dr. Crunk testified that he had reviewed those records and that he had concluded that there was a causal connection between the physical injuries the worker sustained in her work-related accidents and the subsequent psychological injuries from which the worker was currently suffering. Dr. Crunk explained that the chronic pain the worker suffered after the accidents as well as the worker's inability to go back to a job that she had enjoyed and in which she had been functioning well contributed to the worker's depression and panic attacks. Crunk testified, without objection, that "You can't separate a person's mental condition ... when it is based on pain and when it is based on some aspects of the injury itself.... [T]he mental problem certainly impacts the overall ability to work." Even the employer's expert, a neuropsychologist, conceded that a physical injury can sometimes cause mental depression. Dr. Crunk stated that the medical records revealed that, before March 27, 1997, the worker
"was functioning well. She was doing her job. She was handling daily stresses. Then, she developed [depression and panic disorders] after [her] injurie[s]."
*431 Dr. Crunk acknowledged that no physician had noted the worker's depression until January 27, 1999, almost two years after the worker's first on-the-job physical injury, but he explained:
"It takes awhile for [psychological conditions] to get to the point where a doctor notices them to make a referral that it occurred and was occurring.
"[The worker] apparently was under a lot of medical treatment. She was getting a lot of surgeries and having these problems and couldn't go back to work. And it takes a while for that to start developing as [the worker was] starting to see [her] life change drastically...."
Dr. Crunk's explanation of the delay between a physical injury and its accompanying pain and the onset of symptoms of a mental disorder appears to substantiate what the worker's primary-care physician, Dr. Frank D. Miller, recorded in his office notes for January 27, 1999 and March 15, 1999:
"1/27/99  [The worker] is ... very tearful. She cries openly during the office visit and tells me that she had even thought about suicide due to the pain and persistent problems that she has had. She tells me otherwise that she is happy with her marriage and happy with her family. She insists that she is happy but quite obviously she is morbidly depressed at this point.
"IMPRESSION: Depression. She seems quite markedly depressed. I have given her samples of Celexa to take 20 mg. p.o. q.d. We will see her back in two to three weeks for reevaluation of her symptomatology regarding her depression.
"3/15/99  Since her last visit overall her depression is doing much better. She feels better overall. Looks more calm and relaxed, is not as emotional and she is resting better at night. Tolerating the Celexa very well. At this point she makes the statement that she guesses she was depressed, though she did not realize it. I feel this most likely was the case."
(Emphasis added.) On cross-examination, counsel for USX asked Dr. Crunk, "[I]t is also true, is it not, ... that [no] physician or psychiatrist relate [d] this depression and [the] panic attacks to [the worker's] accident of March 27, 1999?" Crunk answered:
"Not directly. They all say this occurred since the accident and basically relate chronic pain and relate inability to go back to work and relate difficulty with coping given the situation."
Citing Ex parte American Color Graphics, Inc., 838 So.2d 385 (Ala.2002), USX contends that, if a vocational expert is not qualified to render an expert medical opinion as to the extent of a worker's disability, the expert is also not qualified to render an opinion as to the cause of a worker's disability. In American Color Graphics, however, the Alabama Supreme Court did not hold that a vocational expert is unqualified to render an opinion relating to a worker's disability. Instead, it held that when a vocational expert bases his or her opinion on inadmissible medical and psychological records and has no independent basis for his opinion  apart from his reliance on the inadmissible records  then the opinion is insufficient to support the trial court's judgment for the worker. In the present case, however, Dr. Crunk relied on medical and psychological records that were admitted without objection.
We conclude that the trial court did not abuse its discretion in deciding that Dr. Crunk was qualified to express an opinion as to whether the worker's physical injuries were contributing causes of her psychological injuries.
*432 The judgment of the circuit court is affirmed.
AFFIRMED.
YATES, P.J., and MURDOCK, J., concur in part and concur in the result.
THOMPSON and PITTMAN, JJ., dissent.
YATES, Presiding Judge, concurring in part and concurring in the result.
I concur with Parts I and III of the main opinion. I concur only in the result as to Part II of the main opinion.
MURDOCK, Judge, concurring in part and concurring in the result.
I concur in Part I of the main opinion and concur in the result reached in the remainder of that opinion. I write separately to note that I disagree with the statement in Part II of the main opinion that this court's holding in Nix v. Goodyear Tire & Rubber Co., 624 So.2d 641 (Ala.Civ.App.1993), did not survive the Supreme Court's decision in Ex parte Vongsouvanh, 795 So.2d 625 (Ala.2000). I see no inherent tension between the holdings in those two cases.
An event causing a work-related disability can, of course, be either the sole cause of the disability or only a "contributing" cause thereof. If an event is only a contributing cause, it may be either a proximate cause or merely a "but-for" cause, i.e., a sine qua non, of the injury. The main opinion emphasizes that Ex parte Vongsouvanh stands for the proposition that an event need not be "the proximate cause" of an injury. The main opinion correctly quotes the Vongsouvanh opinion for its holding that the trial court in that case "should have applied the 'contributing-cause' standard set forth in [Ex parte] Valdez [, 636 So.2d 401 (Ala.1994)]." 795 So.2d at 627 (emphasis added). Elsewhere in the Vongsouvanh opinion, however, our Supreme Court also repeatedly made it clear that, although an event need not be "the" proximate cause of an injury  i.e., the only proximate cause of an injury  it nonetheless must be "a" proximate cause of an injury. Indeed, the holding of the Supreme Court in Ex parte Vongsouvanh was "that the trial court erred when it held that Vongsouvanh had not proved that his physical injuries were a proximate cause of his mental disorders." 795 So.2d at 626 (emphasis added). As the Supreme Court explained:
"Under Alabama law, for an employee to recover for psychological disorders, the employee must have suffered a physical injury to the body and that physical injury must be a proximate cause of the psychological disorders."
Ex parte Vongsouvanh, 795 So.2d at 628 (emphasis added) (concluding that the trial court's judgment must be reversed because "[t]he evidence in the record indicate[d] ... that Vongsouvanh's physical injury was a proximate cause of his mental disorders" (emphasis added)).
Thus, the Supreme Court's opinion in Vongsouvanh is consistent with its earlier decision in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996). As the Supreme Court noted in Ex parte Trinity Industries, Inc.," `[f]or an accident to "arise out of employment" the employment must have been the cause and source of the accident and the resultant injuries must be traceable to a proximate cause set in motion by the employment.'" 680 So.2d at 265 n. 2 (quoting Alabama Textile Prods. Corp. v. Grantham, 263 Ala. 179, 183, 82 So.2d 204, 207 (1955)).
Recently, in Wal-Mart Stores, Inc. v. Morgan, 830 So.2d 741, 745 (Ala.Civ.App.2002), this court quoted from what we referred to as the "leading case in Alabama" *433 governing whether an accident arises out of an employee's employment:
"`[I]n Alabama the employment must be the source and cause of the accident. Our supreme court in Wooten v. Roden, 260 Ala. [606,] 610, 71 So.2d [802,] 805 [(1954)], stated that in order to satisfy the "source and cause" requirement "the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise...."'"
Wal-Mart Stores, Inc. v. Morgan, 830 So.2d at 745 (quoting Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 201-02 (Ala.Civ.App.1981) (emphasis added). "`[T]he but-for test is clearly not the test for causation under Alabama's [Workers'] Compensation Act.'" Wal-Mart Stores, Inc., 830 So.2d at 745 (quoting Slimfold Mfg. Co. v. Martin, 417 So.2d at 202)). See also Grider v. McKenzie, 659 So.2d 612, 616 (Ala.Civ.App.1994) ("In order to meet the `arising out of' requirement, the employee must show a causal connection between the injury and the employment. More specifically, the injury must be rationally traceable to a proximate cause set in motion by the employment and not otherwise." (emphasis added; citations omitted)).
It is true that in Nix this court affirmed a judgment of the trial court in which the trial court wrote that the physical injury in question "`was not the proximate cause'" of the employee's disability. 624 So.2d at 643 (emphasis added). Despite the trial court's use of the word "the," I do not read Nix as suggesting that an event must be the only cause of an injury. Instead, upon reviewing this court's opinion in Nix, I conclude that that is a case in which the trial court simply found, based on substantial evidence, that there was only one proximate cause of the employee's disability, and that that proximate cause was not the employee's work-related physical injury. While the employee's work-related physical injury in Nix might have been a "but-for cause" of the employee's disability, the trial court found that it was not a proximate cause of that injury. As this court stated:
"The physical injury to Nix, occurring several months prior to the death of her fellow employee, and from which she had recovered and returned to work, could at best be termed a remote cause of her subsequent mental disability. To paraphrase, the law, in its practical administration, regards only proximate or immediate, and not remote, causes."
Nix, 624 So.2d at 643. I therefore disagree that this court's holding in Nix did not survive Ex parte Vongsouvanh.
Because I conclude that substantial evidence was presented in the present case that both of the accidents in question were contributing, proximate causes of the employee's disability, I concur in the result.
THOMPSON, Judge, dissenting.
I agree with Judge Pittman that in order to prove that her carpal tunnel syndrome was caused by an on-the-job accident, the worker was required to meet the clear-and-convincing-proof standard. Therefore, I join Judge Pittman's dissent.
I write to add that I believe the main opinion also errs in affirming the trial court's decision to allow Dr. Crunk, a vocational expert, to testify on the issue of the causation of the worker's depression. USX objected to Dr. Crunk's testimony on the basis that Dr. Crunk was not qualified to render an opinion on the cause of the worker's depression. In making that objection, counsel for USX argued that "[Dr. Crunk] has no psychiatric qualifications, no medical licensing in the psychiatric field, and no medical licensing in the field of psychology."
*434 In Tidwell v. Upjohn Co., 626 So.2d 1297, 1300 (Ala.1993), our supreme court allowed a witness to testify as an expert where the witness's "education, experience, study, and background" and his employment as both a pharmacist and a pharmacologist established his qualifications to render an opinion regarding the effect of a particular medication on the decedent. In this case, Dr. Crunk is a licensed vocational rehabilitation counselor; he is not a medical doctor, a psychologist, or a psychiatrist. Dr. Crunk testified only that he believed he was qualified to "give an impression psychologically." The record does not indicate, however, that Dr. Crunk has had any experience with, or has any expertise pertaining to, depression, or that his "education, experience, study, and background" qualified him to testify regarding the cause of the worker's depression. Tidwell v. Upjohn Co., 626 So.2d at 1300. Dr. Crunk established that he was qualified to render an opinion on the effect of the worker's depression on her ability to obtain or maintain employment. However, I do not believe that the record establishes that Dr. Crunk "ha[d] sufficient knowledge to testify as an expert" regarding the cause of the worker's depression. Id. I believe that the main opinion errs in affirming the trial court's decision to admit Dr. Crunk's testimony as to the cause of the worker's depression.
PITTMAN, Judge, dissenting.
As the main opinion notes, the trial court treated the employee's right-wrist carpal tunnel syndrome as a workplace injury arising from an accident; that court's judgment states as a finding of fact that the worker's "claim of a permanent disabling compensable injury to her right wrist is supported by substantial evidence" (emphasis added). The main opinion concludes that because carpal tunnel syndrome may be caused either by repetitive hand movements or by a single acute event, the trial court did not, as a matter of law, err in applying the general "preponderance-of-the-evidence" standard of proof set forth in Ala.Code 1975, § 25-5-81(c), rather than the specific "clear-and-convincing-proof" standard applicable to "injuries which have resulted from gradual deterioration or cumulative physical stress disorders." Based upon my review of the Legislature's 1992 amendments to our workers'-compensation law in Act No. 92-537, 1992 Ala. Acts, as well as cases decided before and after those amendments became effective, I believe that the trial court applied the wrong standard of proof.
"Carpal tunnel syndrome" does not appear in any reported Alabama appellate opinion issued before 1986; however, between that year and the effective date of Act No. 92-537, this court decided several cases involving claims in which workers sought workers' compensation benefits based upon claims that their work had caused them to suffer from carpal-tunnel syndrome. In the first of these cases, we implicitly held that that condition could be a compensable accidental "injury" arising out of and in the course of employment. See Gold Kist, Inc. v. Casey, 495 So.2d 1129 (Ala.Civ.App.1986). However, this court also affirmed, in pertinent part, a judgment determining that a worker who suffered from tenosynovitis, a condition similar to carpal tunnel syndrome, had demonstrated that she had sustained an "occupational disease" as a result of repetitive hand movements in her work on a conveyor belt. W.Y. Shugart & Son, Inc. v. Cox, 578 So.2d 1332 (Ala.Civ.App.1990). Although we affirmed several judgments denying compensation where trial courts had concluded that the claimants had not proven that their carpal tunnel syndrome had arisen out of and in the course of their *435 employment,[1] we also reversed a judgment denying benefits where an employee complained of symptoms of developed carpal tunnel syndrome only two days after beginning work for her employer.[2]
In the preamble to Act No. 92-537, the Legislature made a number of findings and stated a number of conclusions pertaining to workers' compensation claims based upon carpal tunnel syndrome:
"It is ... the intent of the Legislature ... to address difficulties in the current scheme that are producing a debilitating and adverse effect on the state's ability to retain existing industry and attract new industry. The Legislature finds that the current Workmen's Compensation Law of Alabama and other means of compensation or remedy for injury in the workplace ha[ve] unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. There is a total absence of any reliable evidence that the current act has resulted in fewer injuries on the job, and a considerable body of evidence that any added benefit to the worker is significantly offset by the resulting reduction in job opportunities.
"The Legislature has reviewed substantial evidence related to various types of cumulative physical stress disorders, cumulative trauma disorders and certain `natural aging' disorders, including carpal tunnel syndrome, repetitive motion syndrome, and even back and neck infirmities that result from gradual deterioration or the natural process of aging. The Legislature has concluded that it is extremely difficult for the adjudicator of fact to determine whether these disorders are related to work or whether they result from some congenital defect, aging processes, or simply the routine activities of daily living.
"These claims also account for a substantial percentage of the workers' compensation claims in this state and are one of the contributing causes of the current workers' compensation crisis facing this state."
Act No. 92-537, among other things, amended the term "injury" appearing in § 25-5-1(9), Ala.Code 1975, so as to include "physical injury caused either by carpal tunnel syndrome disorder or by other cumulative trauma disorder if either disorder arises out of and in the course of the employment" Act No. 92-537, § 2 (emphasis added). The Legislature simultaneously amended § 25-5-81, Ala.Code 1975, to include a provision that the standard of proof in workers' compensation cases would be proof by the preponderance of the evidence "except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment." Act No. 92-537, § 26 (emphasis added), now codified as Ala.Code 1975, § 25-5-81(c).
The Workers' Compensation Act, as amended by Act No. 92-537 and viewed in light of the preamble to that Act, leaves no doubt that the Legislature specifically intended to classify carpal-tunnel syndrome allegedly arising out of and in the course of employment as a cumulative-physical-stress injury subject to the higher "clear-and-convincing" *436 standard of proof of causation. Simply put, under the Workers' Compensation Act, "[c]arpal tunnel syndrome is a `cumulative stress disorder,' and a worker seeking benefits based on that disorder must present clear and convincing evidence indicating that her carpal tunnel syndrome `arose out of and in the course of [her] employment.'" Thompson v. Akzo Nobel Ind. Fibers, Inc., 796 So.2d 375, 376 (Ala.Civ.App.2001). Although it is possible that carpal tunnel syndrome, as a medical matter, may well arise in some cases from a sudden trauma rather than a gradual deterioration process, the legal classification of carpal tunnel syndrome with respect to a claimant's entitlement to benefits under the Workers' Compensation Act is a legislative policy determination that the courts of this state should not disregard.
Citing Ogden Aviation Servs. v. Saghy, 32 Va.App. 89, 526 S.E.2d 756 (2000), the main opinion posits that to treat carpal-tunnel syndrome as noncompensable in the absence of clear and convincing proof of a causal relationship to an accident would be to improperly classify one type of accidental injury as different from other such injuries. Ogden Aviation addressed the effect of certain amendments to Virginia's workers' compensation laws that classify "ordinary diseases of life," such as carpal tunnel syndrome, as potentially compensable "occupational diseases." In that case, the Virginia Court of Appeals noted that before the legislature of that state had permitted "ordinary diseases of life" to be deemed compensable upon proof by clear and convincing evidence, the Virginia Supreme Court had held that repetitive-motion injuries such as carpal tunnel syndrome were not compensable under that state's workers' compensation laws. 32 Va.App. at 95-96, 526 S.E.2d at 759 (citing The Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996)). However, the Ogden Aviation court nevertheless affirmed an award of workers' compensation benefits to an employee who testified to having suffered carpal tunnel syndrome symptoms after sustaining a puncture wound in the course of his employment, concluding that Stenrich Group and related cases did not preclude a claim that carpal tunnel syndrome had instead resulted from an "identifiable incident" and that such a claim would be subject to a preponderance-of-the evidence standard of proof. Ogden Aviation, 32 Va.App. at 96-100, 526 S.E.2d at 759-61.
However, in this case, this court is called upon to interpret workers' compensation laws enacted by the Legislature of Alabama, not of Virginia. As noted above, before the 1992 amendments to our Workers' Compensation Act, an employee's allegedly work-related carpal tunnel syndrome was held generally to be compensable in Alabama (although it was unclear at that time whether carpal tunnel syndrome should be classified as an occupational disease or as an accidental injury). Both the preamble and text of Act No. 92-537 reveal that the Legislature intended that workers' compensation benefits based upon claims of cumulative physical-stress disorders should not be awarded in the future except upon clear and convincing evidence (not merely substantial evidence) of a causal connection between the employment and the disorder. The Legislature further indicated in Act No. 92-537 that it considered "carpal tunnel syndrome" in particular to be a product of cumulative stress.
While treating one or more types of injury in a different manner than others may not normally be appropriate, it is the Legislature of this state, for good or ill, that has singled out carpal tunnel syndrome as a "natural aging" disorder that prompts "a substantial percentage of the workers' compensation claims in this state" and as being "one of the contributing *437 causes" of a "workers' compensation crisis." The Legislature has therefore decided that carpal-tunnel syndrome should only result in employer liability under the Workers' Compensation Act in the rare case where causation of that condition by a worker's employment can be proved by clear and convincing evidence. It is the role of the courts of this state to give effect to that legislative intent.
Instead of applying the "clear-and-convincing" standard to the employee's claim involving an alleged workplace injury to her right wrist (i.e., the wrist upon which Dr. Autry performed carpal-tunnel release surgery), the trial court stated that her claim of a compensable injury to that wrist was "supported by substantial evidence." Because the trial court patently did not apply the "clear-and convincing-evidence" standard, I believe that the judgment should be reversed and the cause remanded for the trial court to apply the correct standard. See Tallassee Super Foods v. Hepburn, 771 So.2d 477 (Ala.Civ.App.2000). I therefore respectfully dissent from the affirmance.
THOMPSON, J., concurs.
NOTES
[1] Padgett v. Neptune Water Meter Co., 510 So.2d 277 (Ala.Civ.App.1987); Alverson v. Fontaine Fifth Wheel Co., 586 So.2d 216 (Ala.Civ.App.1991); and Clanton v. Hudson Foods, Inc., 594 So.2d 141 (Ala.Civ.App.1991).
[2] Malone v. ConAgra Poultry, Inc., 595 So.2d 897 (Ala.Civ.App.1992).