903 So.2d 118 (2004)
JIM WALTER RESOURCES, INC.
v.
Vonnie Lee RILES.
2020539.
Court of Civil Appeals of Alabama.
May 7, 2004.
Rehearing Denied July 2, 2004.
Certiorari Denied December 17, 2004.
*119 Philip J. Carroll III and Amy K. Myers of Bradley Arant Rose & White, LLP, Birmingham, for appellant.
Becky Thomason, Bill Thomason, and Charlie Ratcliff of Thomason & Thomason, LLC, Bessemer, for appellee.
Alabama Supreme Court 1031580.
YATES, Presiding Judge.
Vonnie Lee Riles sued his employer, Jim Walter Resources, Inc., seeking to recover workers' compensation benefits for a psychological injury he allegedly sustained during the course of his employment with Jim Walter Resources. Riles also alleged a retaliatory discharge in violation of § 25-5-11.1, Ala.Code 1975. The workers' compensation claim and the retaliatory-discharge claim were severed, and the workers' compensation claim was referred to a special master for trial. Following an ore tenus proceeding, the special master, on November 18, 2002, issued a report and recommendation containing findings of fact and conclusions of law determining that Riles's psychological injury was compensable. The trial court, on December 2, 2002, entered an order adopting the special master's report and recommendation.
The special master, on January 29, 2003, issued a supplemental report and recommendation that Riles be awarded temporary total disability and setting forth the amount of those benefits. The trial court, on March 17, 2003, entered an order adopting the special master's supplemental report and recommendation. The trial court specifically noted that Riles had yet to reach maximum medical improvement; therefore, the trial court made no determination as to the extent of any permanent disability. The trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Jim Walter Resources appeals.
*120 This case is governed by the 1992 Workers' Compensation Act, 25-5-1 et seq., Ala.Code 1975. This Act provides that an appellate court's review of the standard of proof and its consideration of other legal issues in a workers' compensation case shall be without a presumption of correctness. § 25-5-81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: "The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
At the time of the incident giving rise to this claim, Riles had been employed as an underground coal miner with Jim Walter Resources for approximately 28 years. On September 23, 2001, Riles was working the evening shift at the Jim Walter Resources Number Five mine when an explosion occurred. Riles and the crew he was working with were in a separate section of the mine at the time of the explosion and were not aware that an explosion had occurred. Riles and his crew were directed to the section of the mine where the explosion had occurred to help fight a fire. While Riles and his crew were en route to the area of the mine where the explosion had occurred, a second explosion occurred. Riles testified that he was blown against the "rib"[1] of the mine by the force of the second explosion, striking his neck and shoulder, and that he was engulfed in smoke and dust. Riles stated that once he reached the surface of the mine he informed a supervisor that he had struck his neck and shoulder during the second explosion but that he was not "hurt that bad." Riles testified that he bruised his shoulder, suffered a stiff neck, and "coughed for days" because of the explosion. Riles did not seek any medical treatment for his physical injuries because "it looked liked to [him they were] getting better." Riles's physical injuries resolved soon after the explosion, although he stated that he suffers from an occasional cough and stiff neck. Thirteen of Riles's coworkers died in the explosions. Following the explosions, the Number Five mine was temporarily closed and Riles was off of work.
On October 10, 2001, Riles notified Jim Walter Resources by letter that he was suffering from "nightmares, loss of sleep, anxiety and nervousness" and that he was in need of treatment from a mental-health professional. Riles was referred to a company psychologist who in turn referred Riles to Dr. Glen O. Archibald, a psychiatrist.
Riles was first seen by Dr. Archibald on November 6, 2001. Riles gave Dr. Archibald a history of being present in the mine at the time of the explosions and of being blown against the "rib." He complained of generalized anxiety, nightmares, difficulty in sleeping, and a decreased libido following the explosions. Dr. Archibald testified that Riles did not report suffering any physical injuries in the explosions other than the history he gave him of being *121 blown against the "rib." Dr. Archibald testified as follows:
"Q. Did he tell you whether or not he received any physical injuries during that explosion?
"A. I don't recall.
". . . .
"Q. So you do not recall him giving you a history of having physical injuries?
"A. Not really.
"Q. Assume, Doctor, that if he were to give a physical history of having been knocked against the mine wall in the explosion and having trauma at that time 
"A. I recall him being knocked.
"Q. Tell us what you recall.
"A. What I recall is that he told us that this per the explosion they were running out. Somebody met them. It was a group of them. And someone said [they] needed to go back and help. And he went forward. And while he was going forward then the explosion, or going towards. I guess the impression I got was the explosion, another explosion happened. He was slammed against the wall . . . something to that extent, that he was  had he gone in the opposite direction he said he would have been, you know dead. He went away from it.
"Q. Is that he had some physical traumas, is that part of what you're evaluating?
". . . .
"A. Huh-uh (negative)."
Dr. Archibald diagnosed Riles with post-traumatic stress disorder. Dr. Archibald described post-traumatic stress disorder as follows:
"[Post-traumatic stress disorder is] a psychological illness you can say that occurs usually when someone feels very  experienced a traumatic  usually a traumatic event. For the average person it is a situation that either themselves or someone close to them lives were in danger. And usually the result of this is nightmares, flashbacks, fear of going around the situation again, intense fear, avoidance, numbing experiences, feeling their lives are shortened, things are never going to be the way they use to be. Just basically they've changed completely. They just become more reclusive and have avoidance."
Dr. Archibald stated that Riles's post-traumatic stress disorder was associated with Riles's having been in the mine at the time of the explosions. Dr. Archibald testified that at the time of trial Riles was unable to return to work as an underground coal miner because "he's so afraid to go down," and that he was not sure when Riles would be able to return to underground coal mining.
Riles was seen by his family physician, Dr. David B. Champlin, on October 15, 2001. Dr. Champlin testified regarding Riles's complaints at that time as follows:
"Q. Do your notes reflect or does your memory reflect any conversation you may have had with Mr. Riles on October 15th?
"A. I was pleased with his progress, as far as hypertension and diabetes. I had seen him months before on August the 3rd, and ordered laboratory work on him. We reviewed that laboratory work, and it was all very good. But his chief complaint was the anxiety, which had been present since September the  I've forgotten, I think 23rd, something like that, when this explosion occurred. He had had difficulty with sleep, bad dreams, he briefly described to me what the explosion amounted to, what the problem in the mine was. . . . He did complain of a cough that he had had immediately following the explosion, and *122 general muscle soreness. He told me he had been thrown against or knocked against a wall, knocked down and had been kind of engulfed in a cloud of smoke and dust. . . . However, most of these  those things, the cough, the soreness, the being knocked down, were not significant problems three weeks later. What his biggest problem was, he was still afraid. He 
". . . .
"Q. . . . On that first October visit that you saw him that you're testifying about, was there anything apparent to you, as a medical professional, wrong with his shoulder or neck?
"A. No. What he complained of, I did not expect to see any physical evidence of injury. His chest was clear. He didn't have any obvious lacerations or bruises. But three weeks later, and he said himself that he had a cough that gradually cleared, he still coughed some; but this was not a real problem to him at the time. It had been, maybe, but his biggest problem was he couldn't get over the anxiety."
Dr. Champlin continued to treat Riles for his anxiety and his "genuine morbid fear" of returning to the underground coal mines. Dr. Champlin stated that Riles was not emotionally capable of returning to work as an underground coal miner and agreed with Dr. Archibald's diagnosis of post-traumatic stress disorder.
Dr. Champlin testified as to the cause of Riles's post-traumatic stress disorder as follows:
"Q. Do you have an opinion as to whether or not Mr. Riles's medical/emotional states relates, in any way, to the physical injury, even minimal as it was, that he incurred, allegedly incurred on September 23, 2001?
"A. Yes. I think very definitely, it did  not to  he experienced it  being knocked down and breathing the dust and smoke. I think that the actual physical experience very definitely makes it more real, rather than someone watching television, watching this happen to people in New York. I think, had you been there and been knocked down, been covered with smoke, it's going to make the emotional aspect much more real.
". . . .
"Q. And I just asked you, during your deposition, flat out whether you had an opinion on the cause of Mr. Riles's post-traumatic stress disorder. I want to reask that question here at the trial. Isn't it true, Doctor, that Mr. Riles's post-traumatic stress disorder or syndrome was caused by his being caught up in this tragic accident that occurred?
"A. Yes."
Riles and other employees were called back to work by Jim Walter Resources in December 2001 when the Number Five mine was reopened. Riles presented Jim Walter Resources with letters from both Dr. Archibald and Dr. Champlin indicating that Riles was unable to return to work as an underground coal miner and requesting work on the surface of the mine.
Jim Walter Resources argues on appeal that the trial court erred in finding Riles's psychological injury compensable, because, it says, substantial evidence was not presented indicating that the psychological injury was produced by or proximately caused by a physical injury. In order for a psychological injury to be compensable under the workers' compensation act, it must be "produced [or] proximately caused by some physical injury to the body." § 25-5-1(9), Ala.Code 1975. See Goolsby v. Family Dollar Stores of Alabama, Inc., 689 So.2d 104 (Ala.Civ.App. *123 1996). Additionally, the physical injury need not be the sole cause of the psychological injury so long as it is a contributing cause of the psychological injury. Ex parte Vongsouvanh, 795 So.2d 625 (Ala.2000).
After reviewing the record in this case, we conclude that Riles presented substantial evidence indicating that the physical injuries he received in the explosion, minimal as they were, at least contributed to his post-traumatic stress disorder. The evidence presented indicated that Riles was thrown against a support pillar by the force of the explosion, striking his neck and shoulder, and that he was engulfed in smoke and dust. Dr. Champlin testified that Riles's post-traumatic stress disorder was caused by his "being caught up in this tragic accident" and that his injuries "definitely" related to his post-traumatic stress disorder. Dr. Champlin stated that Riles's psychological condition was related to his physical injuries in that the physical experiences of being knocked down and engulfed in smoke and dust made the psychological effect of the explosion "much more real."
AFFIRMED.
CRAWLEY, J., concurs specially.
THOMPSON, J., concurs in the result, without writing.
PITTMAN, J., dissents, without writing.
MURDOCK, J., dissents, with writing.
CRAWLEY, Judge, concurring specially.
I write separately to address Judge Murdock's dissent, which relies on Nix v. Goodyear Tire & Rubber Co., 624 So.2d 641 (Ala.Civ.App.1993). Because Nix focused on the phrase "the proximate cause," rather than "a proximate cause," I do not believe that it survived the holdings in the following three decisions by our supreme court: Ex parte Vongsouvanh, 795 So.2d 625, 627 (Ala.2000) (stating that "the trial court should have applied the `contributing-cause' standard set forth in [Ex parte] Valdez [, 636 So.2d 401 (Ala.1994)]. If the court had used this standard, the evidence in the record would have been sufficient for the court to conclude that Vongsouvanh's physical injuries were a contributing cause of his mental disorders."); Ex parte Trinity Indus., Inc., 680 So.2d 262, 270 (Ala.1996) (stating that "to establish `medical causation' in a workers' compensation case, a claimant need only produce substantial evidence tending to show that the exposure to [an occupational] risk . . . `was in fact [a] contributing cause of the injury'" (quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 706, 318 So.2d 729, 732 (Civ.1975))); and Ex parte Valdez, 636 So.2d 401, 405 (Ala.1994) (stating that "[t]o establish medical causation, the plaintiff need not show that the [occupational] hazard was the sole cause of the employee's condition, but rather that the hazard was a `contributing cause' of the injury. A hazard can be a contributing cause if it is one of multiple factors acting in concert to bring about the occupational disease" (citation omitted; emphasis added)). See USX Corp. v. Bradley, 881 So.2d 421, 427 (Ala.Civ.App.), affirmed on other grounds, Ex parte USX Corp., 881 So.2d 437 (Ala.2003).
In my opinion, the term "contributing cause," as used by the Alabama Supreme Court in Vongsouvanh, Trinity Industries, and Valdez, means a factor that, in conjunction with one or more other factors, proximately causes a result. In Vongsouvanh, the supreme court summarized the holding of Ex parte Valdez as follows:
"Recognizing that multiple factors may have [proximately] caused the employee's cancer, we held that the correct standard was whether exposure to the *124 occupational hazard was a contributing cause of the employee's illness and resultant death."
795 So.2d at 627 (emphasis added). Beginning with the acknowledgment that "multiple factors" had "caused" the worker's mental disorders, the court recounted the evidence in the case. The court then concluded:
"Based on this evidence, we find it clear that Vongsouvanh's mental disorders originated from both physical and emotional factors. Thus, the trial court should have applied the `contributing-cause' standard set forth in [Ex parte] Valdez[, 636 So.2d 401 (Ala.1994)]. If the court had used this standard, the evidence in the record would have been sufficient for the court to conclude that Vongsouvanh's physical injuries were a contributing cause of his mental disorders.
". . . .
"The evidence in the record indicates. . . that Vongsouvanh's physical injury was a proximate cause of his mental disorders. Thus § 25-5-1(9), Ala.Code 1975, does not bar his recovery."
Vongsouvanh, 795 So.2d at 627-28 (emphasis added).
MURDOCK, Judge, dissenting.
The main opinion recites most of the applicable facts of this case. I would add the following: While on the way to the site of the first explosion, Riles and members of his crew encountered injured workers being evacuated to the surface. At this time, Riles and those of his crew that were on his "bus" were told to call the surface and let personnel on the surface know that injured workers were on their way out. As this was occurring, a second bus with four of Riles's crew members on board proceeded further into the mine to fight what they thought was a fire.
A second explosion occurred. The second explosion killed 13 miners, including all 4 of the miners on the second bus that were part of Riles's crew.
Workers' compensation law is a creature of statute. See Ex parte Doster Constr. Co., 772 So.2d 447, 450 (Ala.2000). The determinative statute in this case is § 25-5-1(9), Ala.Code 1975. That statute states, in part, that an "injury," for purposes of the Workers' Compensation Act, "does not include a mental disorder or mental injury that has neither been produced nor been proximately caused by some physical injury to the body." (Emphasis added.)
The employee and the main opinion rely upon Ex parte Vongsouvanh, 795 So.2d 625 (Ala.2000), for the proposition that the trial court's award of benefits under the Workers' Compensation Act should be affirmed because it is not necessary that the employee's physical injury be the sole cause of his psychological injury, so long as it is a contributing cause thereof. That proposition is true, so far as it goes. What is also true is that, as required by the statute, any so-called "contributing cause" must also be "a proximate cause" of the ultimate psychological injury.
While Judge Crawley is correct when he states in his separate writing that Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996), and Ex parte Valdez, 636 So.2d 401 (Ala.1994), articulate a "contributing cause" test, neither of these cases holds, contrary to § 25-5-1(9), that it is enough that a physical injury be a contributing cause without also being a proximate cause. Indeed, in the more recent case of Ex parte Vongsouvanh, upon which Judge Crawley also relies, the Supreme Court set forth an analysis of the "contributing cause" test that relied upon its earlier holding in Ex parte Valdez, yet it concluded as follows:

*125 "Under Alabama law, for an employee to recover for psychological disorders, the employee must have suffered a physical injury to the body and that physical injury must be a proximate cause of the psychological disorders. See, e.g., Goolsby v. Family Dollar Stores of Alabama, Inc., 689 So.2d 104, 106 (Ala.Civ.App.1996)."
795 So.2d at 628 (emphasis added). Ex parte Vongsouvanh therefore stands for the proposition that, though a contributing physical injury need not be the sole proximate cause of a psychological injury, it must be a proximate cause of the psychological injury.
In Nix v. Goodyear Tire & Rubber Co., 624 So.2d 641 (Ala.Civ.App.1993), this court affirmed a trial court's judgment that reasoned as follows, in accordance with § 25-5-1(9):
"`This court finds, from all the evidence, that, but for the plaintiff's friend and co-worker's death, the plaintiff would not have sustained her present. . . disabling mental condition. This court further finds, however, that, had the plaintiff not sustained physical injury on the same machine in the same manner, earlier, she also would not have suffered her present disabling mental condition. Therefore, as best as this court can determine, both events contributed to her present mental condition. The court finds, however, that the "precipitating cause" and the proximate cause of her present mental condition and disability was the death of her close friend and co-worker on August 7, 1990, and that, while the physical injury to the plaintiff sustained some seven months earlier in January of 1990 was a contributing factor, it was not the proximate cause of her present mental condition and disability.'"
624 So.2d at 643 (emphasis added).
I disagree with Judge Crawley's view that Nix did not survive the holdings in Ex parte Trinity Industries, Inc., Ex parte Valdez, and Ex parte Vongsouvanh. First, I do not read this court's affirmance in Nix of a trial court's judgment that used the phrase "the proximate cause" as inconsistent with the principle that there can be more than one "contributing cause" of a plaintiff's mental condition. Instead, it was merely a recognition that, under the facts of that particular case, there was only one proximate cause.[2] Second, while the physical injuries that were contributing causes in Ex parte Vongsouvanh and Ex parte Valdez were in fact also proximate causes, that does not change the fact that all contributing causes are not necessarily proximate causes, see, e.g., 57 Am.Jur.2d Negligence § 437 (2004), and that a contributing physical cause must still be proven to be a proximate cause for purposes of § 25-5-1(9), see, e.g., Ex parte Vongsouvanh, 795 So.2d at 628 (concluding that "[t]he evidence in the record indicates" that the employee's physical injury was a proximate cause of his mental disorders).[3]
*126 While there was testimony in the present case that the plaintiff's injuries to his shoulder and neck, along with some smoke inhalation, made his entire experience involving the explosions and his co-workers' deaths "seem more real," he healed from those injuries in relatively short order. Similarly, in Goolsby v. Family Dollar Stores of Alabama, 689 So.2d 104 (Ala.Civ.App.1996), a case relied upon in Ex parte Vongsouvanh, see 795 So.2d at 628, an employee was injured in the course of a robbery; however, it was not the physical injuries suffered in the robbery that proximately caused the employee's post-traumatic stress disorder in that case. Instead, it was the employee's general experience of the robbery itself. Goolsby, 689 So.2d at 106. As a result, the trial court denied workers' compensation benefits to the employee. On the basis of the requirement set out in § 25-5-1(9) that a mental disorder must be "proximately caused" by some workplace physical injury in order to be compensable, this court affirmed. Goolsby, 689 So.2d at 106.
Judge Crawley also relies upon USX Corp. v. Bradley, 881 So.2d 421 (Ala.Civ.App.2003). The views he expresses in the present case reflect those he stated in part II of the main opinion in Bradley, namely, that a "physical injury ... need not be `"the" proximate cause' but only `a contributing cause' of the psychological injury." Bradley, 881 So.2d at 427 (citing, among other cases, Ex parte Vongsouvanh). No other judge of this court concurred in the analysis of part II of the Bradley opinion. See Bradley, 881 So.2d at 432 (Yates, P.J., and Murdock, J., concurring in the result as to part II; Thompson and Pittman, JJ., dissenting). I wrote separately to more fully explain my views concerning this matter, stating, among other things:
"[T]he holding of the Supreme Court in Ex parte Vongsouvanh was `that the trial court erred when it held that Vongsouvanh had not proved that his physical injuries were a proximate cause of his mental disorders.' 795 So.2d at 626 (emphasis added). . . .
". . . [T]he Supreme Court's opinion in Vongsouvanh is consistent with its earlier decision in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996). As the Supreme Court noted in Ex parte Trinity Industries, Inc., `"[f]or an accident to `arise out of employment' the employment must have been the cause and source of the accident and the resultant injuries must be traceable to a proximate cause set in motion by the employment."' 680 So.2d at 265 n. 2 (quoting Alabama Textile Prods. Corp. v. Grantham, 263 Ala. 179, 183, 82 So.2d 204, 207 (1955)).
"Recently, in Wal-Mart Stores, Inc. v. Morgan, 830 So.2d 741, 745 (Ala.Civ.App.2002), this court quoted from what we referred to as the `leading case in Alabama' governing whether an accident arises out of an employee's employment:
"`"In Alabama the employment must be the source and cause of the accident. Our supreme court in Wooten v. Roden, 260 Ala. [606,] 610, 71 So.2d [802,] 805 [(1954)], stated that in order to satisfy the `source and cause' requirement `the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise. . . .'"'
"Wal-Mart Stores, Inc. v. Morgan, 830 So.2d at 745 (quoting Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 201-02 (Ala.Civ.App.1981)) (emphasis added). `"[T]he but-for test is clearly not the test for causation under Alabama's [Workers'] Compensation Act."' Wal-Mart *127 Stores, Inc., 830 So.2d at 745 (quoting Slimfold Mfg. Co. v. Martin, 417 So.2d at 202). See also Grider v. McKenzie, 659 So.2d 612, 616 (Ala.Civ.App.1994) (`In order to meet the "arising out of" requirement, the employee must show a causal connection between the injury and the employment. More specifically, the injury must be rationally traceable to a proximate cause set in motion by the employment and not otherwise.' (emphasis added; citations omitted))."
Bradley, 881 So.2d at 432-33 (Murdock, J., concurring in part and concurring in the result). The same views that led me to concur in the result in favor of the employee in Bradley cause me to conclude that this court should hold in favor of the employer in the present case.
On the authority of § 25-5-1(9) and the decisions of our Supreme Court and this court in the cases of Ex parte Vongsouvanh, Goolsby, and Nix, I must respectfully dissent. I do not find that the evidence in the record before us supports the trial court's finding that the employee's relatively minor physical injuries were a proximate cause of his psychological injury.
NOTES
[1] A "rib" is a support column in a mine.
[2] Likewise, there was only one proximate cause in Goolsby v. Family Dollar Stores of Alabama, Inc., 689 So.2d 104, 106 (Ala.Civ.App.1996). See discussion infra.
[3] The Supreme Court in Ex parte Vongsouvanh found the employee's psychological disorder to be compensable based on facts quite different than those presented in the present case, including more significant and longer-lasting physical injuries to the employee, complaints of pain by the employee in both his ankle and his hand despite previous surgeries, and a psychiatric diagnosis of four mental disorders, including "(1) depression, (2) chronic-pain syndrome, (3) `status-post-motor-vehicle-accident' with traumatic injuries, and (4) reflex sympathetic dystrophy secondary to the accident." 795 So.2d at 626.